(Wells *v*. Ritter.)

---

*[Philadelphia, February 10, 1838.]     [*208]

WELLS <em>against</em> RITTER.

IN ERROR.

One devised as follows :—"I give and devise to my wife A. all my estate situate in the township of E., for and during her natural life, and to her issue by me begotten, his or her heirs and assigns forever ; but if no heir by me should live to the age of twenty-one years, or marry, my will then is that my real estate shall be equally divided between my sister S.'s children and the children of my brother W., provided he should have any." The testator died on the day after the date of his will. His wife was then *enciente* of a child who was born after the death of the testator, and survived her mother, but died under the age of twenty-one years, and unmarried. *Held*, that the limitation over to the children of S. and W. was an executory devise, and not a contingent remainder, and consequently that the children of W., who might be born after the death of the posthumous child, would be entitled to take.

An action was brought in this Court to July term, 1837, by John Wells, to the use of Samuel A. Price, and others, his assignees, against William Ritter ; and by agreement of the counsel, a case was stated for the opinion of the Court, as follows:—

"Eli Yarnall, of the county of Delaware, in the state of Pennsylvania, by his last will, dated the 27th day of August, A. D. 1812, after declaring his intention to dispose of his worldly estate, devised as follows :—

'I give and devise to my well beloved wife Alice Yarnall, all my estate situate in the township of Edgmont, for and during her natural life, and to her issue by me begotton, his or her heirs and assigns forever ; but if no heirs by me should live to the age of twenty-one years, or marry, my will then is that my real estate shall be equally divided between my sister Sarah's children and the children of my brother Walker Yarnall, provided he should

(Wells *v.* Ritter.)

have any; my sister Sarah's children taking one-half, and the children of my brother Walker the other half part.'

Eli Yarnall, the testator, died on or about the 28th day of August, 1812.—At the date of the will, Alice the wife of the testator, was *enciente* of a child, who was born after the death of the testator, but died on or about the 24th of March, 1831, under the age of twenty-one years, unmarried. Alice Yarnall, (the widow,) died on or about the 24th of March, 1830. Sarah, the testator's sister, was *dead at the date of the will, leaving two children, who survived the testator. Walker Yarnall, the brother of the testator, is living, but has never had children. The said Walker Yarnall, and the children of Sarah Yarnall, who were also the heirs at law of the testator, conveyed to the plaintiff.

[*209]

The question for the opinion of the Court is, whether an absolute title to the premises is vested in the plaintiff?"

Mr. *Edwards,* for the plaintiff.

1. Alice Yarnall, the widow of the testator, took an estate tail by this devise, under the rule in *Shelly's Case ;* and consequently, the limitation over to the unborn children of Walker Yarnall, gave a contingent remainder, not an executory devise. It is evident that the intent of the testator here was that the issue should take in succession. The general rule, as to this intention, is clear. The words "no heir by me," are indefinite in respect to time. The meaning is, " all heirs;" and it is equivalent to saying, ." if my issue shall fail." There is nothing here to designate any individual as the object of the testator's bounty. The word "issue" cannot be taken as *designatio personæ.* It is generally equivalent to the words " heirs of the body." *Doe* v. *Asplin,* (1 Term Rep. 82). The result of the cases is, that " issue" is descriptive of all issue to come. *Sibley* v. *Perry,* (7 Ves. 522); *Leigh* v. *Norbury,* (13 Ves. 340). In *Den* v. *Puckey,* (5 Term Rep..299,) the devise was to A. for life, without impeachment of waste, remainder to the issue male of her body, and to the heirs and assigns of such issue male; yet it was held that A. took an estate tail. Suppose that the testator had survived, and had a second child, if the word *issue* is held here to be *designatio personæ,* that child would not have taken at all. That the word "issue" is *nomen collectivum* is shown by several cases. *King* v. *Mellen,* (2 Levinz, 58); *Attorney General* v. *Sutton,* (1 Peere Wms. 754); *Dobson* v. *Grew,* (2 Wilson, 322). In *Carter* v. *M'Michael,* (10 Serg. & Rawle, 429,) C. J. Tilghman recognised the rule that a particular intent must give way to the general intent. If the devise here had stopped with the words " heirs and assigns forever," doubtless this would be an

(Wells v. Ritter.)

estate tail. Are there any inconsistent words ? It is settled that superadded words merely, will not reduce the estate to one for life. *Doe* v. *Goff*, (11 East, 668); *Jesson* v. *Wright*, (2 Bligh, 2); *Goodright* v. *Pullen*, (2 Ld. Ray. 1437); *Measure* v. *Gee*, (5 Barn. & Ald. 910 ; 7 Eng. Com. Law Rep. 300); *Doe* v. *Goldsmith*, (7 Taunt, 209); *Doe* v. *Cooper*, (1 East, 229). The fair inference is that the testator intended an estate tail, unless the words necessarily refer to a particular person; and to defeat the rule of law the intention must be so clear and explicit that no one can doubt about it.

2. Even if Alice Yarnall took an estate for life only, yet the limitation *over was not an executory devise, but a con- [*210] tingent remainder. There is some confusion in the books, and contradiction in the cases, on this subject. The devise to the unborn child must be considered as executory. Both devises depended upon a contingency. Suppose that no child had been born, the limitation to the children of Walker Yarnall would clearly have been a remainder. Here was a sufficient estate of freehold to support it. The case of *Carlisle* v. *Cannon*, (3d Rawle, 489,) which recognises the rule that if there be a sufficient preceding estate of freehold, the succeeding estate cannot be an executory devise, is in point. So is the case of *Rattew* v. *Waddell*, (5 Rawle, 231). The whole doctrine is discussed, and the cases collected in Preston on Estates, p. 59, 83, 88, and 488, 493 ; *Doe* v. *Burnsall*, (6 Term Rep. 30); *Crump* v. *Norwood*, (7 Taunt. 362 ; 2 Eng. Com. Law Rep. 136); 4 Kent's Com. 201; Wilson on Springing Uses, 16, 17, 18.

Mr. *T. I. Wharton*, for the defendant.

1. Alice Yarnall took an estate for life only under this will. The rule in *Shelly's Case* has been abrogated in at least four of the states of the union, and considerably modified, by a recent statute, in England. As it in almost every case defeats the expressed intention of the testator, this Court will not be disposed to carry it beyond the limits prescribed by the adjudged cases. No one can doubt the particular intention of the testator in the devise to the first taker in this case, and there is no general intent which can be supposed to have existed, at variance with it. The devise is to his wife for life only ; and if an estate tail had been given to her it would have enabled her to give away the whole estate from her child, or to carry it into another family. In this respect the case differs from a similar devise to a child of the testator. From an examination of the rule as it is stated by the best authorities, it may be said that whether the word *heirs, heir, issue, child, son, or daughter*, be used, if the word appears to have been employed with reference to a particular

(Wells *v.* Ritter.)

person and not to a line of descendants, the first devisee will take an estate for life only. In this case the words are extremely significant. The testator was within a few hours of his death. He knew that his wife was pregnant, but of course was ignorant of the sex of the child. The use of the words " *his or her,*" in connection with the word " *issue,*" proves that he meant, by the latter word, a particular individual. In *Doe* v. *Collis,* (4 Term Rep. 299,) Lord Kenyon says, that in a will the word *issue* is a word either of purchase or limitation, as will best answer the intention of the testator. In the *Earl of Oxford* v. *Churchill,* (3 Ves. & Beames, 67,) the Master of the Rolls calls it an ambiguous term, and says that " it may, and frequently does, mean *children* only." The same language is used by Judge Yeates, in *Findlay* v. *Riddle,* (3 Binn. 160.) The earliest [*211] case resembling *this is *Archer's Case,* (1 Coke, 66,) where the remainder was to the next heir in the singular number, and it was adjudged an estate for life in the first taker. *Cheek* v. *Day,* (which was cited from Fearne's Cont. Rem. 150,) also greatly resembles this. So of *Luddington* v. *Kime,* (1 Ld. Raymond, 203): and the remarks of Powel, J. (p. 204, 5,) as to the meaning of the word *issue,* are applicable here. In *Shaw* v. *Weigh,* (2 Strange, 998,) an estate for life was adjudged upon this word. In *Goodright* v. *Puller,* (2 Strange, 731,) the devise was to N. for life, and after his decease to the heirs male of the body of the said N. and *his* heirs forever, but in case he should die without such heir male, then over : it was held to be an estate tail in N.; but this was in consequence of the Court referring the word *his* to the first taker and not to his heir, as appears from the remarks of C. J. Raymond. In *Backhouse* v. *Wells,* (stated in Fearne, 152,) and *Doe* v. *Laming,* (2 Burr. 1100,) under similar devises, estates, for life only, were adjudged. The case most closely resembling this in its terms is *Gulliver* v. *Wickett,* (1 Wilson, 105,); and there, although no child came *in esse,* yet the devise over was held to be a good executory devise. The remarks of Mr. Fearne on this case, (pages 396, 7, 7th ed.) are entirely apposite to this devise. The cases cited are all which are in point before the revolution. The recent English cases are less satisfactory in respect to principles, since there is some contradiction to be found in them, and there is an apparent disposition in some of the judges to carry the rule beyond its former limits. Still there is no authority for applying it to a case like the present. In *Doe* v. *Collis,* (4 Term Rep. 294,) the words were " to the issue of her body and their heirs forever ;" and it was adjudged an estate for life only. So in *Doe* v. *Elvey,* (4 East, 313,) the devise was to A. and the issue of his body " his, her, or their heirs," &c. Le Blanc, J. held that A.

(Wells *v.* Ritter.)

took for life only. A similar doctrine prevailed in *Gretton* v. *Hayward*, (6 Taunt. 94; 1 Eng. Com. Law Rep. 320,) and *Merest* v. *James*, (1 Brod. & Bing. 487; 5 Eng. Com. Law Rep. 156). The American cases in point are generally to the same effect. In *Ray* v. *Enslin*, (2 Mass. Rep. 554,) the devise was to the testator's wife for life, and after her death to his daughter and her heirs forever. There was no question that the wife took for life only; and the only difference between that case and this is, that here the testator was ignorant of the sex of the infant. *Rogers* v. *Rogers*, (3 Cowen, 303); *Lyle* v. *Digges*, 6 Harr. & Johns. 364,) and the very recent case of *Cushney* v. *Henry*, (4 Paige's Chan. Rep. 345,) also support this view. In the case of *James's Claim*, (1 Dall. 47,) it is true that an estate tail was adjudged to be in the first taker, but there the word *issue* was used in the plural number. The same will came before the Court again in *Evans* v. *Davis*, (1 Yeates, 332,) where it was held that the remainder over was vested, and not contingent. In *Harris* v. *Potts*, (3 Yeates, 141,) the devise was to E. and to her male heir forever, *i. e.* her son *T. in case he should live to come to age and enjoy it, but if T. should die before, [*212] then to J. and his heirs forever, and the Court held that E. took it for life only, and that J. took by way of executory devise. The words of the devise in *Findlay* v. *Riddle*, (3 Binn. 139,) strongly resemble this, and were held to pass an estate for life only. The same will was again considered in *Stump* v. *Findlay*, (2 Rawle, 168,) when a similar adjudication took place. *Abbot* v. *Jenkins*, (10 Serg. & Rawle, 296,) is to the same effect. The cases cited on the other side may be divided into two classes. 1st. Those which show that *issue* is sometimes *nomen collectivum*, as *Doe* v. *Asplin*, &c. which is not disputed, but these cases also admit that it is at other times *designatio personæ*. 2d. Those which prove that superadded words of limitation as "to the heirs," or "heirs of the body," of the second devisee, do not necessarily defeat the rule in *Shelly's Case.* Such is *Den* v. *Puckey*, &c. These cases merely prove that where the limitation is to "heirs" generally, or "heirs of the body," as a class, the superadded words make no difference. But none of these cases come up to this point, where the devise was to a particular child, with superadded words to the heirs of such child, followed by expressions limiting the estate over on the death of such child under twenty-one, &c. In the case of *Carter* v. *M'Michael*, there was an obvious reference to an indefinite failure of issue; and the language of C. J. Tilghman shows that the Court were governed by what they supposed to be the general intent of the testator.

2. Even if Alice, the widow of the testator, took an estate tail by force of the rule in *Shelly's case*, yet there was a *vested* re-

(Wells *v.* Ritter.)

mainder in fee in the infant child, which took effect in possession on the death of the mother ; and consequently, the limitation over, could not be a contingent remainder. It is plain from the words of the will, that the testator referred to a particular individual, who was in existence though unborn. There are, it is true, some contradictory expressions in the books, but there is an obvious distinction between an unbegotten child, and one begotten but not born. In the first case the remainder may be contingent, but not in the latter. Suppose a remainder limited to the child of a person living at a distance from the testator, of whose name and sex he was ignorant. Clearly this would be a vested remainder. Then as to the actual existence in law of an infant *in ventre sa mere*, there is abundant authority. 2 Vernon, 710 ; 3 Inst. 50 ; *Andrews* v. *Fulham*, (2 Strange, 1093) ; Stat. 10 & 11 Wm. III. c. xvi. In *Doe* v. *Selby*, (2 Barn. & Cress. 926 ; 9 Eng. Com. Law Rep. 278, 279,) Judge Bayley, referring to *Gulliver* v. *Wicket*, says "The description of the child there, was a clear *designatio personæ ;* and as a child *in ventre sa mere*, is for many purposes considered as *in esse*, the first remainder, a fee determinable, was vested in that child, and the remainder over could only operate by way of executory devise." Suppose the mother in this case had died before the actual birth of the child (which is possible) [*213] *though but for an instant, then if this were but a contingent remainder, the child could not have taken. The cases cited on the other side, to prove that this was not a vested remainder, are all cases of children not *in esse ;* and the general remarks of the elementary writers quoted, must be understood with this qualification. In *Crump* v. *Norwood*, (7 Taunt. 362,) C. J. Gibbs said, that if there had been issue born, the estate over would have been an executory devise. The rule, that when a devise is capable, according to the state of the objects at the death of the testator, of taking effect as a remainder, it shall not be construed to be an executory devise, does not affect the argument, since here was a vested remainder at the testator's death. But the rule itself is not an universal one, nor without exceptions. In 2d Powel on Devises, (by Jarman,) p. 244, 245, it is shown by several authorities that a limitation is sometimes governed by subsequent events. And this also appears in *Doe* v. *Selby*, and *Crump* v. *Norwood.*

Then, whether the widow of the testator took an estate for life or in tail, the first remainder was a vested remainder in fee, defeasible on a certain event ; and the limitation to the children of Walter Yarnall, was not an alternate or shifting remainder, but an executory devise, and within the limits allowed by law in respect to such estates. Fearne's Cont. Rem. 395, 396, (7th ed) ; *East-*

(Wells *v.* Ritter.)

*man* v. *Baker*, (1 Taunt. 173); *Glover* v. *Monckton*, (3 Bing. 13; 11 Eng. Com. Law. Rep. 9).

Mr. *Tilghman*, in reply.—The testator in this case, it is obvious, considered the probability of his brother having issue as very slight: and it is not to be supposed that he meant to keep the fee in abeyance under any circumstances.

1. It is too late to question the validity or even the propriety of the rule in *Shelly's case*. In the words of Judge Yeates: "It is an unbroken pillar of the system." And the Courts in this country will find that the real interests of property are best promoted by adhering to it. The opposite argument takes it for granted that the testator referred to an actual existing child. Now, the will does not say so; and *non constat* that the testator knew that his wife was pregnant. In *Gulliver* v. *Wicket*, it appears that the testator distinctly referred to the child with which his wife was *enciente*. The words here, give an estate tail in express terms. In *Robinson* v. *Robinson*, (1 Burrow, 38,) though the words were "to my wife for life and no longer," yet an estate tail was held to pass. If his will had stopped at the words "issue by me begotten," no one would have doubted. I admit that whenever the word *issue* must necessarily be construed *children*, the rule does not apply; but in the large majority of cases it is equivalent to *heirs of the body*. That the testator here uses the word in that sense, is shown by the subsequent expressions "if no *heir* by me," &c. The word *issue*, is *always in the plural. The words "his or her," superadded, do not break the line of descent. [*214] It was the tenancy in common that governed in *Findley* v. *Riddle*. The rule to be collected from the numerous cases on the subject which are collected and well arranged in Hayes on Devises, &c., is that superadded words will not of themselves produce any effect upon the rule in *Shelly's case*. In *Morris* v. *Wood*, or *Le Gay*, cited in 8 Term Rep. 518, the words were to the heirs of the body, and "his heirs and assigns," yet it was held to be an estate tail. The same case is cited in 5 Term Rep. 304, 2 Burr. Rep. 1102, and 2 Atkyns, 249. In *Measure* v. *Gee*, the words were "his, her, or their heirs and assigns." No case has been adduced, in which, from the will itself, the Court has not been satisfied that the testator used the words in a sense different from their legal sense. In *Archer's case*, the decision turned on the words "next heir." *Doe* v. *Goff*, (11 East, 668,) was overruled in *Jesson* v. *Wright*, (2 Bligh, 1,) where the whole subject is discussed at length, and the paramount claims of the rule in *Shelly's case* reasserted.

(Wells *v.* Ritter.)

2. If Alice took an estate for life only, yet all the subsequent estates were contingent remainders, not executory devises. It is an established rule that if.there be an estate of freehold capable of supporting a remainder, the next limitation must be a remainder. *Purefoy* v. *Rogers*, (2 Saunders, 380); Fearne, 393; *Dunwoody* v. *Reed*, (3 Serg. & Rawle, 435); *Carlisle* v. *Cannon*, (Id. 491.) The case of *Gulliver* v. *Wicket*, is the only one which expressly sustains the opposite argument; and that case seems, from the language of recent elementary writers, not .to be considered as law at the present day. Wilson on Springing Uses, 24. I contend that the estate given to the unborn child was necessarily a contingent remainder, and that the subsequent vesting in possession, did not alter the condition of the succeeding estate so as to turn it into an executory devise. The rule that it is the state of the objects at the death of the testator that governs, is certainly unshaken; and it is considered to prevail without exception, by the best writers. 2 Jarman's Powell, 238, &c.

The opinion of the Court was delivered by

KENNEDY, J.—The question to be determined here is, whether under the will of Eli Yarnall, and the conveyance from Walker Yarnall, the brother of the testator mentioned in the will, and the children of the testator's sister Sarah, also mentioned therein, to the plaintiff, he has become invested with a good title in fee to the estate mentioned in, and disposed of by the will. The case has been very well argued by the counsel on both sides; and in such a way as to relieve the Court in a great measure [*215] from the labour, that *otherwise must have been encountered in seaching and looking into the cases hith-erto decided on this abstruse branch of the law.

First. It has been argued by the counsel for the plaintiff, that Alice the wife of the testator, took an estate tail under the will, according to the rule in *Shelly's case*, (1 Co. 66); which is, that "if by any instrument, a freehold be limited to the ancestor for life, and the *inheritance* to his heirs, either *mediately* or *immediately*, the first taker takes the whole estate; for instance, if it be limited to the heirs of his body, he takes a fee tail, if to his heirs, a fee simple." Prest. on Estates, 265.

Second. Supposing that in this they·are mistaken, and that Alice took only an estate for life, it has been contended then, that the limitation to her issue must be regarded as a contingent remainder, and consequently, the subsequent limitation to the testator's sister Sarah's children, and the children of his brother Walker Yarnall, is to be taken as a contingent remainder also, and not an executory devise; and the preceding particular estate

(Wells *v.* Ritter.)

of freehold which supported it, having expired without Walker Yarnall's having a child, the remainder of his children being an undivided moiety of the estate, is gone, and has become vested by descent in Walker Yarnall, and the children of the testator's sister Sarah, as the heirs at law of the testator.

The words of the will, upon which the question arises here are, "I give and devise to my well beloved wife Alice Yarnall, all my estate situate in the township of Edgmont, for and during *her natural life*, and to her *issue, by me begotten*, *his* or *her* heirs and assigns forever; but if no *heir by me* should live to the age of twenty-one years, or marry, my will then is, that my real estate shall be equally divided between my sister Sarah's children and the children of my brother Walker Yarnall, provided he should have any ; my sister Sarah's children taking one half, and the children of my brother Walker the other half part." The will was made on the 27th of August, 1812, and the testator died on the following day. His wife was *enciente* at and for some time before the making of the will, and gave birth to the child shortly after his death. The child, however, died subsequently, on the 24th of March, 1831, about one year after the death of its mother, under the age of twenty-one years, and without having been married. From the testator's dying the day after making his will, it is reasonable to conclude, that he made it under the prospect of almost immediate death; and as his wife had been pregnant for some time previously thereto, that he must have known it; and she having no other child by him, that he must have intended to provide for it. But as the child was not actually born then, he could not designate it either by its name or sex. Under these circumstances, it would therefore seem, as if he selected and used the word *issue* for this purpose; and that, after giving the estate to the mother for life, confident, no doubt, *that she would support and provide for the child out of it during that period, his great object was to make the [\*216] child, if it should live until it attained the age of twenty-one years or got married, the absolute owner of the estate in fee. This conclusion would seem to be highly probable, if not irresistible, from the terms of the will and the situation of the testator's family, at the time of making it. He knew that he had no issue by his wife then actually born, but that she was then with child by him; and believing, as it may reasonably be supposed, that death was waiting at the door, as it were, to take him off, he never could, in making his will, have thought that his wife was ever to have any other *issue* by him than the child of which she was then *enciente*. The most rational inference certainly is, that he introduced the word *issue* into his will in reference to what he then believed was the state of his family; intending

(Wells *v.* Ritter.)

thereby to designate and provide for the child *in ventre sa mere*, by limiting the estate in fee to it, after the determination of the life estate given to his wife, subject, however, to be determined by the child's dying before the age of twenty-one, or marriage.

But it has been objected here, that the situation of the testator's family at the time of making the will, or other circumstances not appearing on the face of the will itself, are to have no influence upon its construction; it is contended, that it must be interpreted *ex visceribus suis.* The late Mr. Justice Duncan, in delivering the opinion of this Court in *Swift* v. *Duffield,* (5 Serg. & Rawle, 39,) says, "Where the intention of a testator is ambiguously expressed, the time of making the will; *the state of the property;* and situation of the family, are often resorted to in aid of its construction." Lord Talbot, also, in *Stapleton* v. *Colville,* (Talb. Ca. 208,) seems to intimate, where the question was, whether the testator intended by his will to charge his debt exclusively on his real estate, that the amounts of the debts, and *quantum* of the personal estate might be inquired into, by saying, that it might have thrown great light on the matter in that case had it appeared. This, however, is expressly denied by Lord Thurlow, in *Ancaster* v. *Mayer,* 1 Bro. Ch. Ca. 466, 467,) by Lord Northington, in *Stephenson* v. *Heathcote,* (1 Eden's Ca. 43); by Lord Alvanley, in *Brummel* v. *Prothero,* (3 Ves. 113); by Lord Eldon, in *Bootle* v. *Blundle,* (1 Meriv. 216, 217,) and by Lord Chancellor Manners, in *Aldridge* v. *Wallscourt,* (1 Ball & Beat. 315). See also *Cole* v. *Rawlinson,* (1 Salk. 234, 235,) and *O'Brien* v. *Inchiquin,* (Ridg. Ca. 249). Still, however, notwithstanding it seems to be settled by a series of decisions in England, that the condition of the testator's estate cannot be inquired into and taken into consideration further than it shall appear from the face of the will itself, in order to determine the construction that shall be put on it, yet the condition of his family may. And Lord Chancellor Manners, accordingly, in *Crone* v. *Odell,* (1 Ball. & Beat. 480, 481,) in answer to an argument [*217] urged by *the counsel there for the defendant (with a view to exclude the consideration of the state of the testator's family,) that the Court could not travel out of the will for that purpose, said, "The contrary has been held to be the law from the time of *Wilde's Case,* (6 Co. 16,) to the present time. In *Goodinge* v. *Goodinge,* (1 Ves. 231,) the same argument was urged and overruled by Lord Hardwicke; and his opinion upon that point has been confirmed by the uniform decisions of courts of equity ever since." See also *Radcliffe* v. *Buckley,* (10 Ves. 201.) But here it is clear from the will itself, that the word *issue* is used in the singular number, and cannot be taken as *nomen collectivum,* for it is the antecedent to the relative words

(Wells *v.* Ritter.)

"his or her," which latter, it must be admitted, are in the singular number, and in this respect must agree with their antecedent. Neither the word "his" nor "her" can be referred to the wife here, so as to create in her an estate tail, as was done in *Lisle* v. *Pullen,* (2 Stran. 731,) where, though the devise was "to Nicholas for and during the term of his natural life, and after his decease unto the heirs male of the body of the said Nicholas lawfully to be begotten, and *his* heirs forever;" yet the Court, by referring the word "his" to Nicholas, held that he took an estate tail. Here, however, it is perfectly manifest, that the words "his" and "her" are referable to the same antecedent; and the word "his" being of the male gender, cannot, in the nature of things, more than by the common rules of grammatical construction, be forced to have reference to the wife; it can only have reference to the word "issue;" and as it was unknown then whether that *issue* was male or female, the relative of either sex is used, so as to be applicable to the child, whichsoever of the two sexes it might be of. This brings the case then within the principle of *Archer's Case;* making the term "issue" here a word of *purchase,* as the word "heir," in the singular number, was held to be there. It cannot be said that the word *issue,* technically speaking, is less a word of purchase, when used in the singular number, than the word *heir.* The word *issue,* perhaps, has no precise technical meaning affixed to it, and must always depend, I apprehend, upon the context for its true signification, whether it shall be taken as a word of *purchase* or of *limitation.* Indeed, Chief Baron Yelverton, in *Mandeville* v. *Carrick,* (3 Ridg. P. C. 365,) considers it, technically, a word of *purchase.* Lord Kenyon also says, in *Doe* v. *Collis,* (4 Term Rep. 299,) that it is generally considered a word of *purchase,* and indeed universally so in deeds, though in a will it may be taken as a word of *purchase* or of *limitation,* as will best answer the intention of the testator. Mr. Preston, in his Treatise on Estates, 1 vol. 379, says, it is not *ex vi termini,* within the rule in *Shelly's Case;* and that it depends on the context, whether it will give an estate tail to the ancestor. Justice Clive, in *Dodson* v. *Grew,* (2 Wils. 324,) observes, "The word *issue* is one of the most vexed words in the books; sometimes *it is *nomen singulare,* sometimes *plural,* sometimes a word of *limitation,* sometimes of *purchase;* but it must always be construed according to the intent of the will or deed wherein it is used;" and Justice Gould, in the same case, says, "The word issue is used in the statute *de bonis* promiscuously with the word *heirs of the body.* The term *issue* comprehends the whole generation, as well as the word *heirs,* and in my judgment, the word *issue* is more properly in its natural signification a word of *limitation*  [*218]

(Wells *v.* Ritter.)

than of *purchase.* Justice Rainsford had said previously, in *Warman* v. *Seaman,* (Finch's Rep. 282,) "the word *issue ex vi termini* is *nomen collectivum,* and takes in *all issues* to the utmost extent of the family, as the word *heirs of the body* would do;" and for this he vouched *Wilde's Case,* (6 Co. 17.) Mr. Justice Grose reports the declaration of Justice Rainsford, in *Doe* v. *Applin,* (4 Term Rep. 88,) after having said, "There is no case, in which *issue* has been determined to be a word of *purchase,* unless coupled with other words, expressing such an intent." He, however, must be understood as speaking in reference to cases growing out of wills. But even thus restricted, it may be questionable, whether he be right. And justice Clive went too far, perhaps, if he meant to say, that the word *issue* was to be considered either a word of *limitation* or *purchase* in a *deed* as well as a will, accordingly as might seem to accord best with the intention thereof: for I rather take it to be as Lord Kenyon has said, that in a deed it has generally at least, if not universally, been considered, and received as a word of *purchase.* In a popular sense, however, I think it can scarcely be doubted, but it is used to mean *children;* and the popular meaning of words is certainly not to be overlooked in the construction of wills, especially when made or drawn by unskilful persons. But still, notwithstanding there may have been some diversity of opinion among judges, whether the word *issue* has any precise technical meaning affixed to it or not, and if it has, whether it be that of a word of *limitation* or of *purchase,* yet they all seem to agree, that in a *will* it shall be taken to signify the one or the other, as shall best comport with the intention of the testator. See *Kirkpatrick* v. *Kirkpatrick,* (13 Ves. 483–4–5).

It is agreed, however, that if the word *issue* here be in the singular number, it must be considered a word of *purchase.* This was also agreed, in regard to the word *heir,* as Lord Mansfield says, in *Doe* v. *Laming,* (2 Burr. 1110,) where words of limitation were ingrafted upon it in the singular number : and therefore agreed, that such *heir* would take by purchase. This he said was settled in *Archer's Case,* and was admitted in the case of *Dubler on the demise of Trollope* v. *Trollope,* (P. 2 Geo. 28, B. R.) though that case was distinguished from *Archer's Case,* by having *no* words of limitation superadded to the words "first heir male." In *Luddington* v. *Kime,* (1 Salk. 224 ; s. c. 1 Ld. Raym. 205,) the [*219] *word *issue* was held to be a word of *purchase.* There the land was devised to A. for life, without impeachment of waste ; and in case he have *any issue* male, then to *such issue* male and *his* heirs forever ; and if he die without issue, then to B. and his heirs forever. The Court held, that *issue* was to be taken as *nomen singulare,* because the inheritance (that is, the

(Wells v. Ritter.)

superadded words of limitation) was annexed and limited to the word *issue;* so that the inheritance was in the *issue,* and not in A. the father.    And to this it may be added, that the word *issue* was shown clearly there, as in the case before us, to have been used as *nomen singulare,* by inserting the relative thereto "his" in the singular number—"to such *issue* male and his heirs forever;" and not " to such *issue* male and *their* heirs forever;" as most probably would and ought to have been the case, had not the word *issue* been intended to designate a single individual. Accordingly Lord Northington, in speaking of this case in *King* v. *Burchell,* (1 Eden's Ca.431,) and in undertaking to distinguish it from the case under his consideration, says, " The Court, in order to make the word *issue* a word of *purchase,* held that it was to be taken there as *nomen singulare,* because the inheritance was annexed to the word *issue;* that is, the *words of inheritance* were connected with and referred to the word *issue,* by means of the word *his* in the *singular* number.    But in the case before Lord Northington, the word *issue* was shown to be in the *plural,* by means of its relative " their" being placed in the *plural:* thus, " to his *issue* and *their* heirs;" and therefore he held the word *issue* to be a word of limitation.    The intention, however, of the testator, in the case before us, to use the word *issue* in the singular number, and as a word of *purchase,* is not only indicated by the relatives " his" and " her," but likewise by his substituting the word *heir* afterwards in the singular number for the word *issue;* when he says, " but if no *heir* by me should live to the age of twenty-one years, or marry," &c.    The term *heir* alone here would, perhaps, be sufficient to bring this case within the principle of *Archer's Case;* but in connection with the word *issue,* previously used, in the singular number, it becomes a much stronger case than *Archer's,* in favour of the child, then *in ventre sa mere,* taking as a purchaser.

If, however, by confining ourselves to the words of the will, without travelling out of it, any doubt existed in regard to this being the intent of the testator, the state of his family at the time of making it, which is proper, as we have seen, to be taken into the consideration, would be more than enough to remove it.

Taking the word *issue,* then, as a designation of the child, with which the testator's wife was *enciente,* at the time of making the will, we are next to inquire what interest it took, under the will, upon the death of the testator; and whether it was vested or contingent.    The superadded words of inheritance to the word *issue* \*made the interest, intended for such *issue,* clearly a fee-simple estate, subject, however,     [\*220]    to be determined by such *issue* or *child* dying before twenty-one

(Wells *v.* Ritter.)

or marriage. And if it be that this child, which was afterwards born, though subsequently to the death of the testator, is to be regarded as *in rerum natura* at the time of making the will, it would seem naturally to follow, that the estate ought to be considered vested, and not contingent. It must be admitted, that according to some, if not all, of the most ancient authorities in the common law, it would appear that a devise to *fitz in ventre sa mere*, was void, because it was not considered then as being *in esse* at the time of making the devise. See *Scattergood* v. *Edges*, (12 Mod. 282–3, 286–7,) and the books there referred to. But the judicial opinion on this subject most unquestionably underwent a change in England before the time of our revolution; so that, at that time, and for a considerable time before, there can be no doubt, it would have been considered good, at least, as a contingent remainder or executory devise, accordingly as it had a particular previous freehold estate, or not, to support it, if not positively good as a vested interest. Lord North, in *Taylor* v. *Biddal*, (2 Mod. 292 ; .s. c. 1 Freem. 244,) says, " A devise to an infant *in ventre sa mere*, is good, and it shall descend to the heir in the mean time ; for the testator could not intend he should take presently ; he must *first* be *in rerum natura ;* so that it works in the nature of an *executory* devise." So in *Gynes* v. *Kemsley*, (1 Freem. 293,) he again repeats, " The law is clear now, that a devise to an infant *in ventre sa mere* is good enough, though he be born after the death of the testator, and he will take by way of *executory* devise when he is born." Again, some eighteen years afterwards, Pasch. 6 William & Mary, the Court of King's Bench, in *Reeve* v. *Long*, (1 Salk. 227 ; s. c. 309 ; 3 Lev. 408 ; 4 Mod. 282 ; Skin. 430 ; Comb. 252 ; 12 Mod. 52 ; Holt, 228, 286,) where the testator seised of lands in fee died after devising the same to his nephew H. L. for life, remainder to his first son in tail male, and so on to the second, third, &c. ; and for default of such issue to his nephew, R. L., &c., H. L., after the death of the devisor, married and died without issue, other than leaving his wife *enciente* with a son, it was held, that this posthumous son was not entitled to the remainder ; thereby affirming the judgment of the Common Pleas, because the remainder being contingent, as the judges of these Courts conceived, so long as the son was not actually born, it was lost by the previous determination of the father's life estate which supported it. This judgment, however, was reversed upon writ of error in the House of Lords, contrary to the opinion of all the judges, who were much dissatisfied therewith, as it was said. Shortly afterwards, the statute of 10 & 11 W. 3, c. 16, was passed, declaring that posthumous children shall take estates limited in remainder

(Wells v. Ritter.)

by marriage or other settlement to which they would be enti-
tled, if born, in the same manner as if born in the lifetime of
*their fathers, although there be no limitation to trustees.  [*221]
It was questioned by some, whether this statute extended
to *devises*, as the words of it are "where an estate is by any
marriage or other settlement limited," &c.    See a *quære*, by Mr.
Salkeld, at the close of his report of *Reeve* v. *Long*, (1 Salk.
228).    Mr. Butler, in a note to Co. Litt. 298, says also, "there
is a tradition, that as the case of *Reeve* v. *Long* arose upon a
will, the lords considered the law to be settled by their determi-
nation in that case, and were unwilling to make any *express men-
tion* of limitations or devises made in *wills*, lest it should appear
to call in question the authority or propriety of their determina-
tion;" though he seems to think that the words of the act may
be considered without much violence, to comprise settlements of
estates made by will, as well as settlements of estates made by
deed.    It is also said in Buller's N. P. 105, that there is no
ground for the doubt suggested by Salkeld.    And in *Roe* v.
*Quartley*, (1 Term. Rep. 634,) the Court seem to take for
granted, that it is applicable to wills as well as deeds.    But cer-
tainly the decision of the House of Lords was sufficient without
the aid of the act, to settle the law and the rule in favour of
posthumous children taking under a will in the same manner as
if actually born; so that, since the determination of *Reeve* v.
*Long* by the House of Lords, the law, in England, ought to be
considered as settled, that an infant *in ventre sa mere* is capable
of taking an estate limited to it in remainder.    But it is some-
what unaccountable, that not only, after the law had been thus
established, in favour of the capacity of an infant, *in ventre sa
mere*, to take a remainder limited by will, but even after the
passage of the statute of 10 & 11 W. 3, it should have been
thought by any to be contingent, until the actual birth of the
child.    Yet this would seem to have been the case, from what is
said by the Court in *Gulliver* v. *Wicket*, (1 Wils. Rep. 106,)
where the testator believing that his wife was with child, when in
fact she was not, devised lands, of which he was seized in fee, to
her for life, and after her death to the child, she was then *enciente*
with, in fee, the Court said, they were of opinion, that the re-
mainder in fee to the supposed child was a good *contingent*
remainder.    It is clear, that as the testator was altogether mis-
taken about his wife being in a state of pregnancy, the remain-
der was absolutely void; but why the Court, upon the supposition
that the fact had been as the testator supposed, seemed to think
that the remainder would have been good as a *contingent* remain-
der, I cannot conceive; for the child would have been as com-
pletely *in esse*, and as fully capable of taking the estate limited

(Wells *v.* Ritter.)

to it, according to the final determination of *Reeve* v. *Long*, and the application that has been made of 10 & 11 W. 3, c. 16, as if it had been actually born and visible to the world at the time of making the will: if so, the remainder limited to it, had been *in ventre sa mere*, would have been a vested remainder, liable, how-ever, to *be divested perhaps in the event of the child's not being born alive afterwards. And accordingly, Mr. Justice Bayley pronounces it a vested remainder in *Herbert* v. *Kelley*, (2 Barn. & Cross, 925; s. c. 9 Eng. Com. Law. Reps. 278–9). His words are, " As a child *in ventre sa mere* is for many purposes considered *in esse*, the first remainder, a fee de-terminable, was *vested* in the child, and the remainder over could only take effect by way of executory devise." It seems to me, then, that not only authority, but reason, and the analogy of the law, all unite in requiring that such a limitation should be treated as a vested remainder, ever after the conception of the child, if subsequently born alive. A child *in ventre sa mere* is deemed by law as in life or being for a variety of purposes at least. The mother may be guilty of murder by taking poison with an intent to destroy it, if it should be born alive thereafter and die from the effect of the poison ; yet murder can only be committed by killing a *reasonable creature in being ;* hence the child is deemed such, though only *in ventre sa mere* at the time of taking the poison. 3 Inst. 50 ; 1 P. Wms. 245, 487. An infant *in ventre sa mere* may be vouched in a recovery, though it is for the pur-pose of making him answer over in value, if God should give him birth. 1 Inst. 390, a. *Thellusson* v. *Woodward*, (4 Ves. 322); so that, from this, it would appear, that such infant is not merely considered as in being in those cases alone, where it is for his benefit to be so, according to the rule of the civil law, *Wallis* v. *Hodson*, (2 Atk. 119,) but for the purpose also of being charged in some instances. He may be an executor, Swinburne, 359, part 5. He may take under the statute of distributions. *Wal-lis* v. *Hodson*, (2 Atk. 115); *Burnatt* v. *Mann*, (1 Ves. 156); *Edwards* v. *Freeman*, (2 P. Wms. 446). He may also take by devise. Swinburne, 250, 251 ; Moore, 177 ; Com. Dig. tit. De-vise (1). He may be entitled under marriage articles to a por-tion as a child *living* at the death of the father or mother. *Mil-ler* v. *Turner*, (1 Ves. 85). He may have an injunction to stay waste. *Lutteral's Case*, cited in *Hale* v. *Hale*, (Prec. in Chan. 50); 2 Vern. 710; and he may have a guardian; 12 Car. 2, c. 24, sec. 8 & 9. The most of these positions are repeated by Mr. Justice Buller, in *Thellusson* v. *Woodward*, (4 Ves. 322,) who also repeats there what was laid down by Lord Hardwicke, in *Wallis* v. *Hodson*, (2 Atk. 117). " The principal reason, says Lord Hardwicke, I go upon in this question is, that the

(Wells v. Ritter.)

plaintiff was *in ventre sa mere* at the time of her brother's death, and consequently a person *in rerum natura*, so that both by the rules of the common and civil law, she was, to *all intents and .purposes*, a *child*, as much as if born in the father's life-time." This proposition of Lord Hardwicke is fully sustained by the previous cases, decided on this subject, of *Burdett* v. *Hopegood*, (1. P. Wms. 486, 487); *Beale* v. *Beale*, (Id. 246,) and *Hale* v. *Hale*, (Prec. in Chan. 50). And subsequently in conformity to the same principle, Lord Hardwicke decided in *\*Miller* v. *Turner*, (1 Ves. 88,) that a posthumous child was within the provision contained in marriage [\*223] articles, for such children of the marriage, as should be *living at the death* of the father or mother. Lord Thurlow also, in *Clarke* v. *Blake*, (2 Bro. Ch. Ca. 320,) held that a child *in ventre sa mere* at the death of A. should take as a child *living at the death* of A. The same principle was confirmed afterwards by the same, in 2 Ves. Jr. 673. The same question growing out of the same will, came before the Common Pleas in *Clarke* v. *Clarke*, (2 Hen. Bl. 399.) According to the case, as stated there, lands were devised to B. for life, and after his decease, to *all* and *every such child* or *children* of B. as should be *living at the time of his decease;* and it was held by all the judges that a *posthumous* child of B. should share equally with those born in his lifetime : and that in law, at least, if not in fact, an infant *in ventre sa mere* was considered as *born* for *all purposes* which were for *his benefit*. And in con-firmation of this last position, afterwards, in *Whitelock* v. *Hed-don*, (1 Bos. & Pul. 243,) the devise. being to any son of John Whitelock, begotten and *born* in lawful wedlock, *at the time* of John Heddon's attaining the *age of twenty-one years*, it was held unanimously, that a son *born* about *four months after* the time, when John Heddon attained twenty-one was entitled to take under the devise. So, previously to this, in *Lancashire* v. *Lancashire*, (5 Term Rep. 49,) the King's Bench seem to take it as a matter conceded and settled, that an infant *in ventre sa mere* is *born* for *every purpose* where it is *for his advantage* to be so ; and Mr. Justice Grose there, page 64, says, "The instant the child is born, he is considered by *retrospect* as *born during the parent's life.* For this opinion I refer to the civil law, as was done in *Christopher* v. *Christopher*, and the other cases which are founded on that law. Vinniers says, "*si modo postea nascatur, tunc enim fictione juris nativitas retrotrahitur.*" In *Trower* v. *Butts*, the last English case to which I shall refer on this point, (1 Simons & Stewart, 181; s. c. 1 Cond. Eng. Ch. Rep. 90,) the bequest was in trust for all the children of

(Wells *v.* Ritter.)

the testatrix's nephew R. *born in the lifetime of the testatrix,* and it was held by the Vice-Chancellor, that a child of which the wife of R. was *enciente* at the time of the testatrix's death, though not born for four months afterwards, was included in the bequest.

The stat. of 10 & 11 W. 3, c. 16, being in force here, and the English decisions made anterior to our revolution being regarded as having a binding authority, the case of *Swift* v. *Duffield,* (5 Serg. & Rawle, 40,) may be considered as having been determined in conformity to them. There it was held that a grand-child, *in ventre sa mere,* at the time of making the will, and born after the death of the testator, was entitled to a grandchild's share, under a devise and bequest to the testator's grandchildren, the children of his son A., deceased, of all the remainder and residue of his estate, both real and personal, whatsoever [*224] and wheresoever to be found. Mr. Justice *Duncan, in delivering the opinion of the Court, after repeating and recognising the principle as laid down by Lord Hardwicke in *Wallis* v. *Hodson,* says, "A child in the womb of the mother is under the protection of the law, and *possessed of all the privileges of a living being.* He is considered *as born from the time the will takes effect.*" It is perfectly obvious, that the Court considered and treated the share of the posthumous grand-child as an interest that *vested* immediately upon the dying of the testator. Indeed, it is impossible that such child could have taken at all under the will, unless as a vested interest; because, otherwise, the whole of the *residuum* of the testator's estate, must have vested in the other children of his deceased son A., and been taken by them exclusively.

Seeing, then, that a child *in ventre sa mere,* at the time of the testator's death, being the time also when the will takes effect, and born afterwards, is not only considered *in esse* but as *born,* for the purpose of taking any benefit under the will that it would be entitled to, in case it had been actually born, then, it would necessarily seem to follow, that whatever is thereby given to such child cannot be considered as contingent by reason of any uncertainty in respect to the child's existence. As to the object of the testator's bounty, in such case it is considered as *in being* and *certain;* and if there be no uncertainty or contingency attending the gift in any other respect, it will be considered as vesting immediately upon the death of the testator.

According to this doctrine, then, the devise here to the *issue* of the wife, that is, the child with which she was then pregnant, as we construe it, became vested in interest immediately in the

(Wells *v.* Ritter.)

child, upon the death of the devisor, though it could not vest in possession during the life of the wife, who had the right thereto for that period.   Consequently, the devise to the child, there being general words of inheritance superadded to the same, constituted a vested remainder in fee, but liable to be determined by the child's not living till twenty-one or marriage, according to the subsequent provision and limitation of the estate, whereby it is given to the children of the devisor's sister Sarah, and the children of his brother, Walker Yarnall, provided he should have any.   But this last limitation of the estate being after a previous fee therein given to the child of his wife, which vested in it upon the death of the devisor, could only take effect as an executory devise.   It is pretty much like the case in 1 Equity Ca. Abr. 188, pl. 8, where one devised land to his wife, till his son should come to the age of twenty-one years, and then that his son should have the land, to him and his heirs, and if he died without issue before said age, then to his daughter and her heirs; and it was held to be an executory devise to the daughter, if the contingency happened.   The child, then, having died here before it attained twenty-one years of age, or contracted matrimony, the \*children of the devisor's sister Sarah, thereupon [\*225] became entitled to an undivided moiety of the estate, which they took as an executory devise: and should Walker Yarnall, the brother, having no child or children as yet, hereafter have any, a thing still possible in contemplation of law, as long as he is in being, however old or infirm he may be, such child or children will become entitled to the other moiety.   The title of the plaintiff is therefore liable to be defeated, as to a moiety of the estate, in case Walker Yarnall should have a child hereafter. Consequently, as it is not absolutely indefeasible, the defendant is not bound to accept it under the agreement for the purchase of the estate.

Supposing however, the limitation to the child *in ventre sa mere*, were a contingent and not a vested remainder at the death of the testator, still it cannot be pretended, that it did not become *vested* immediately upon the birth of the child; for the devise to the child is not given upon any contingency or condition precedent; such as "if it shall attain the age of twenty-one years or get married."   Indeed it might perhaps have admitted of a question whether the words of the will do not import a devise of the estate immediately to the wife and child jointly, for the life of the wife, with a determinable fee in remainder to the child; the words are, " I devise to my wife all my estate during her life, *and* to her issue (child) by me begotten, his or her heirs and assigns forever," &c.   The wife and child seem to be joined in this devise simply by the copulative " and."   But

(Wells v. Ritter.)

waiving this question, and admitting there were such apparent words of condition annexed to the devise to the child, the limitation over would have been considered so far explanatory of them, as to have prevented their receiving such a construction. This principle seems to be fully established by the cases of *Edwards* v. *Hammond*, (3 Lev. 132; s. c. 2 Show. 398; 4 Bos. & Pull. 324, in note); *Broomfield* v. *Crowder*, (4 Bos. & Pull. 313); *Hunt* v. *Moore*, (14 East, 601,) and *Roake* v. *Nowell*, (1 Maule & Selw. 327; s. c. 5 Dow. 202). These authorities go to show that the condition in such cases is to be regarded as of a subsequent character. In the last case cited, which was affirmed in the House of Lords, the devisor devised to his nephew J. R. for life, who was not even married, and had no children till after the death of the devisor, remainder to and among his children lawfully begotten, equally, *at the age of twenty-one*, and their heirs, as tenants in common; but if only one child should live to attain such age, to him or her, and his or her heirs, *at his or her age of* twenty-one; and in case his said nephew should die without lawful issue, or such lawful issue should die before twenty-one then over. J. R. marrying afterwards, and having children, levied a fine during their minority, which raised the question whether their shares were contingent or vested, or in other words, destructible by the act of J. R. or not. The Court of [*226] King's Bench held that the remainders were *vested in the children on their births, and said that the case was concluded by *Broomfield* v. *Crowder*, which was fully considered. There the devise was in *remainder*, of all the testator's estate to J. D. Broomfield, *if* the said J. D. B. should live to the age of twenty-one years; but in case the said J. D. B. died under twenty-one, and C. Broomfield should survive him, *then over;* and it was resolved that J. D. Broomfield took a *vested* estate, *determinable* upon the contingency of his dying under twenty-one. After that devise, came the case of *Doe* v. *Moore*, which was an *immediate* devise of the testator's real estate in fee to J. Moore, when he attained the age of twenty-one, but in case he died before twenty-one, then to his brother, &c.; and there it was held that J. Moore took a *vested* estate. So that, whether the devise be in *remainder* or an *immediate* devise, it appears there is no substantial difference.

The remainder in fee determinable having vested in the child here immediately on its birth, if not before, the limitation over to the children of the devisor's sister Sarah, and of his brother Walker, could only take effect, if at all, as an executory devise, because, according to the rules of law, no estate can be limited to take effect after a fee, except by way of executory devise.

But whether the fee upon which the limitation over is en-

(Wells v. Ritter.)

grafted, be immediate, or one in remainder, either contingent or vested, can make no difference, so that the contingency upon which it is limited to take effect, must necessarily happen, if ever, within one or more life or lives in being and twenty-one years after, including a sufficient number of months for the birth of a child *in ventre sa mere.*   See Fearne on Cont. Rem. and Ex. Dev. 429, and note also, (8th ed).   But it has been objected, that as no child was in being at the death of the devisor, and if none had been born afterwards alive, the limitation over, to the children of Sarah and Walker, respectively, would, in that case, have been good as a contingent remainder ; and if so, it shall not be construed an executory devise according to a change produced in the state of objects subsequently to the death of the devisor ; because it is a rule, said to be without an exception, that if a devise *according to the state of the objects at the death of the testator,* be capable of taking effect as a remainder, it shall not be construed to be an executory devise ; for this *Purefoy* v. *Rogers,* (2 Lev. 39 ; s. c. 2 Saund. 380) ; *Reeve* v. *Long,* (Carth. 310) ; *Goodright* v. *Cornish,* (4 Mod. 258) ; and 2nd Jarman's Powell on Dev. 237, are cited.   Admitting the applicability of the rule, still I apprehend, it is saying too much, that it is without an exception.   And Mr. Jarman himself, in his 2 Powell on Dev. 244, 245, has referred to *Fonnereau* v. *Fonnereau,* (Doug. 487, 508, 509,) where the testator devised to the heirs male of the body of T., testator's eldest son, (to whom an estate for life had been limited by deed,) and on default of such issue, to testator's second, third, fourth, and fifth sons, successively in tail male : and it was held, that if T. died *leaving an heir male of his body, the limitation to the testator's next son took effect as a remainder expectant [*227] on the estate tail of such heir male ; and if he died leaving no male issue, that it took effect immediately as an executory devise. And Lord Mansfield encounters the rule thus : "An obvious objection to the *alternative* in this case is, that if the limitation over is a remainder, it cannot be turned into an executory devise. *That* is true, if it ever vest as a remainder.   But here it might or might not, upon a contingency ; and it never did.   2d. So in *Hopkins* v. *Hopkins,* Lord Talbot decided, *in support of the intent,* that a limitation which in one event would have operated as a remainder, but which event did not happen, should operate as an executory devise.   This he did upon principle, without precedents ; and a great estate is now held under his determination. 3d. *Brownsword* v. *Edwards,* is another strong instance, where it was held that a devise may operate either way, according to the events."   Here, then, according to the reasoning of Lord Mansfield, and the authorities cited by him, in order to support

the intent of the testator, the remainder in fee to the *issue,* or child of the wife, having vested, and having again been determined by the child's dying before twenty-one or marriage, the devise over to the children of Sarah and Walker, if he should hereafter have any, must necessarily be construed and be permitted to operate as an executory devise. And in *Herbert* v. *Selby,* before referred to, the devise was to the testator's son G. for life, and from and after his decease, unto all and every the child and children of G. lawfully to be begotten, and their heirs forever, to hold as tenants in common, and not as joint tenants; but if his son G. should die without issue, or leaving issue, and such child or children should die before attaining the age of twenty-one years, or without lawful issue, then over to his son T., his daughter A. S., and his son-in-law W. D., and to their heirs for ever, as tenants in common and not as joint-tenants, Mr. Justice Bayley, in delivering his opinion in this case, presents it precisely under the supposed aspect which the case before us has actually assumed, from the events that have happened; and expresses his opinion without the least doubt in favour of its operating as an executory devise. "But it may happen," says he, "that an estate may be devised over in either of two events; and that in the one event, the devise may operate as a contingent remainder, in the other, as an executory devise. Thus if G. had left a child, a determinable fee would have vested in that child, and then the devise over, could only have operated as an executory devise." Judgment is rendered for the defendant.

Judgment for the defendant.

Cited by Counsel, 7 Watts & Sergeant, 97; 2 Barr, 336; 11 Harris, 238; 4 Casey, 99; 6 Id. 167, 174; 7 P. F. Smith, 386.

