## LEVI BUTLER and others *vs.* CHARLES WHITE.

### January 23, 1879.

The ruling in *Camp* v. *Thompson, ante,* p. 175, holding a certain instru-
ment to be an absolute conveyance, and not a chattel mortgage, fol-
lowed.

Notice to Sheriff before Suit.—The ruling in *Barry* v. *McGrade,* 14 Minn.
163, holding that Gen. St. c. 66, § 137, requiring notice to be given in
certain cases to an officer levying upon personal property before bring-
ing suit against him, applies only to cases where the property is levied
upon or taken by the officer while in the possession of the defendant
in the process, or his agent, followed.

Transfer of property to Creditor, by Debtor and his Fraudulent Grantee.—A. E.
W., with intent to defraud his creditors, transferred personal property
to J. H. W. Before any other creditor had acquired a lien on the
property, B., a creditor of A. E. W., entered into an arrangement with
him and J. H. W., pursuant to which the latter transferred the property
to B., in payment of the debt of A. E. W. to him. *Held,* that if this
arrangement was made in good faith, the transfer of J. H. W. to B.
was valid as to other creditors, although B. knew of the fraudulent
character of the transfer by A. E. W. to J. H. W.

Attachment levied by outgoing Sheriff—Execution.—Where a sheriff levies an attachment in an action, an execution on the judgment in the action, issued after such sheriff goes out of office, should be delivered to, and executed by, the sheriff in office when it issues.

Same—Abandonment of Attachment Levy.—An outgoing sheriff had levied an attachment on personal property. An execution on the judgment in the action issued after such sheriff went out of office, and was delivered to his successor in office, who, with the knowledge and consent of the plaintiff in the execution, returned it, " No property found." *Held*, that this was an abandonment by the plaintiff in the execution, of the lien acquired by the levy of the attachment.

Plaintiff brought this action, on May 9, 1873, in the district court for Cottonwood, Murray and Pipestone counties, to recover possession of a large quantity of lumber, taken by the defendant as sheriff of Cottonwood county on execution on a judgment in favor of the St. Paul Lumber Co., against Ahimiaz E. Wood. A jury was waived, and the action tried by a referee, who found the facts, in substance, as follows: On June 8, 1872, A. E. Wood was engaged in the lumber business at Windom in Cottonwood county, where he owned a lumber-yard and the lumber therein. On that day, being insolvent and indebted, among other creditors, to the St. Paul Lumber Co., he transferred to his brother, J. H. Wood, all the lumber in his yard, and other personal property, and at the same time, and as part of the same transaction, received from J. H. Wood certain promissory notes, including those afterwards turned over to plaintiffs, as stated below. This transfer was made by A. E. Wood, with intent to hinder, delay and defraud his creditors, including the St. Paul Lumber Co., and was therefore void as to such creditors.

On June 22, 1872, the St. Paul Lumber Co. brought suit against A. E. Wood, and caused a writ of attachment to be issued, which was, on the same day, levied by Hosea Eastgate, then sheriff of Cottonwood county, on the property so transferred to J. H. Wood. On January 15, 1873, the St. Paul Lumber Co. recovered judgment in that action against A. E. Wood, for $11,363.77, which judgment was on January

v.25m—28

18, 1873, docketed in Cottonwood county. On January 27, 1873, execution on this judgment duly issued, directed to the sheriff of Cottonwood county, which was, on February 8, 1873, delivered to the defendant White, who, on January 1, 1873, had succeeded Eastgate as sheriff of the county. On February 10, 1873, White, with the knowledge and consent of the St. Paul Lumber Co., endorsed on the execution a return that he had made diligent search, etc., and could find no property of the judgment debtor on which to levy the execution, and that he therefore returned it wholly unsatisfied. On April 1, 1873, the defendant filed the execution, with this return thereon, in the proper clerk's office. Eastgate, who, as sheriff, had levied the attachment, and whose term of office expired on January 1, 1873, continued to hold the writ of attachment and the attached lumber and other property, until about April 1, 1873, when he turned over the writ, and all the property attached, to the defendant, his successor in office. Ever since he went out of office, Eastgate has continued to reside in the county, and is entirely competent mentally and physically to perform the duties of sheriff.

On April 1, 1873, an *alias* execution duly issued on the judgment of the St. Paul Lumber Co. against A. E. Wood, and was on the next day delivered to the defendant as sheriff, who on April 3, 1873, levied the same on all the property which had been attached, and which had been delivered to him by his predecessor in office, Eastgate, and which he still held in his possession, and proceeded to advertise for sale the property so levied on, when it was replevied by the plaintiffs. The defendant rebonded the property, and on May 16, 1873, sold it under the execution for $3,024, which sum, less his fees and expenses, he turned over to the St. Paul Lumber Company.

At the time of the fraudulent transfer to his brother, and when the attachment was levied, A. E. Wood was indebted to the plaintiffs in an amount exceeding $3,000. Afterwards plaintiffs applied to him for payment or security of this debt,

and thereupon it was agreed between the plaintiffs, A. E. Wood and J. H. Wood, that A. E. Wood should transfer to plaintiffs, as collateral security for such debt; six of the notes made to A. E. Wood by J. H. Wood on the transfer of the lumber-yard, and that these notes should be secured by a special assignment and transfer of all the lumber and property which had been attached in the suit brought by the St. Paul Lumber Company. To carry out this agreement, A. E. Wood endorsed and delivered the six notes to the plaintiffs, and J. H. Wood executed and delivered to plaintiffs the following instrument:

"Whereas I, Jonah H. Wood, of Windom, Cottonwood county, Minnesota, am indebted to L. Butler & Co., a firm composed of," (giving names of all partners,) "in the sum of $3,000, and interest, upon six promissory notes, each dated June 8, 1872, and in the sum of $500, payable respectively in 60 days, 90 days, 4, 5, 6 and 7 months after their said dates to A. E. Wood or bearer, with interest after the maturity of the same respectively, at ten per cent. per annum, and made by said Jonah H. Wood, and by him delivered, endorsed and transferred for value to said L. Butler & Co., and now held and owned by them: and whereas the whole amount of said notes and interest is now due to said L. Butler & Co.: Now this agreement made by and between said Jonah H. Wood, of the first part, and said L. Butler & Co., of the second part, witnesseth: That in consideration of said indebtedness, said party of the first part hereby sells, transfers and delivers to said second party and their assigns, all the goods and chattels and personal property belonging to said first party, and situate in the town of Windom, in the county of Cottonwood, in said state, a full description of which is given in the schedule marked exhibit A, hereto annexed and made a part of this agreement, the same being intended to include and cover all the lumber, timber, lath and shingles, of every character, now being in an enclosure in said town of Windom, and occupied formerly as a lumber-yard by one A.

E. Wood, as well as other personal property designated in said schedule: to have and to hold the same as the absolute property of said second party, and for the uses and purposes following: Said second parties are hereby authorized to take full possession and control of said property, and to sell and dispose of the same on the best terms and in such a manner as in their judgment shall seem best and most advantageous to said respective parties, and from the proceeds thereof, after paying all reasonable expenses in selling the same, pay the said notes hereinbefore specified and the amounts due thereon, returning the overplus, if any, to said first party."

The schedule referred to was attached to the instrument, which was executed and delivered at the day of its date, was duly acknowledged, and was filed in the office of the town clerk of the town of Windom, on March 29, 1873.

At the time the plaintiffs received this instrument, they knew that the transfer by A. E. Wood to J. H. Wood was fraudulent as to the creditors of the former, and knew that the sheriff had endorsed the return of *nulla bona* on the execution in favor of the St. Paul Lumber Co., and that he was about to file the same with the clerk of the court, and were advised by their counsel that the effect of such return would be to release the lien of the attachment; and they relied upon such return in taking the transfer.

Immediately after the attachment was levied, and about July 22, 1873, J. H. Wood brought a suit against the deputy of Eastgate (the then sheriff) who made such levy, and against the St. Paul Lumber Co., for damages for the taking of the attached property. The defendants therein answered, justifying the taking under the writ, and on November 11, 1873, the action was dismissed by plaintiff, of his own motion, and an order of dismissal entered. On May 21, 1874, on motion of the defendants therein, judgment was rendered in such action that the plaintiff take nothing thereby, and that the defendants recover their costs.

Upon these facts, the referee found that the plaintiffs were

entitled to judgment for the return of the property, or for the sum of $3,024, the value thereof, in case a return could not be had, and for costs. A motion for a new trial was denied by *Macdonald, J.,* acting for the judge of the sixth district, and the defendant appealed.

*U. L. Lamprey,* for appellant.

*George Bradley,* for respondent.

BERRY, J.* 1. The instrument executed by J. H. Wood, running to the plaintiffs, was of the same character as the instrument treated of in the opinion of this court in *Camp* v. *Thompson, ante,* p. 175. It was therefore not a chattel mortgage, but an absolute conveyance; and if not invalid, it operated to make the plaintiffs general owners of the property conveyed by it.

2. The defendant's position in reference to the matter of the demand, or more properly speaking, the notice, required by Gen. St. *c.* 66, § 137, to be given to a levying officer in certain cases, is disposed of by the construction heretofore given to the provisions found in that section, by this court, in *Barry* v. *McGrade,* 14 Minn. 163. It is there held that those provisions were "intended to apply only to cases where the property was levied upon or taken by the sheriff while in the possession of the defendant in the process, or his agent." From the findings of the referee, it appears that at the time of the levy of the *alias* execution, the property levied upon was either in the plaintiff's possession, or in that of Eastgate, the outgoing sheriff. In any event, therefore, it was not in the possession of A. E. Wood, the defendant in the execution. To this state of facts, therefore, the statute prescribing notice did not apply, and this we presume to have been the opinion of the referee.

3. The transfer made by A. E. Wood to J. H. Wood was found by the referee to be void as to the creditors of the former. The word "void" is used by the referee in the not uncommon sense of voidable. That is to say, in this case,

* Cornell, J., having been of counsel, did not sit in this case.

the finding that the transfer is void as to creditors, is, in meaning and effect, a finding that they can avoid it or treat it as void, if they choose to take action to that end.

4. The plaintiffs in this case were creditors of A. E. Wood. As to them, therefore, his transfer to J. H. Wood was voidable. They might, therefore, have availed themselves of their right to treat the transfer as void, and have laid hold of the transferred property by legal proceedings. But in order to avail themselves of the voidability of the transfer, it was not necessary for them to resort to such proceedings. It was, for instance, unquestionably competent for them, acting fairly and in good faith, to enter into and complete an arrangement with both the Woods, whereby, and as the result of which, the property transferred should, in whole or in part, be turned out to them in payment of their debt, or as the means of its payment. This is, in substance and effect, what appears to have been done in this case. By virtue of the transfer from A. E. to J. H. Wood, the legal title of the property stood in the latter. The paper transfer to the plaintiffs was therefore very properly made by J. H. Wood, with the concurrence of A. E. Wood. And if, as is in effect found by the referee, the arrangement by which the transfer was effected was made when the defendant, the St. Paul Lumber Co., which was also a creditor of A. E. Wood, held no lien secured upon the property, we can conceive of no reason why it should not be held valid and effectual. The outcome is substantially the same as if the plaintiffs and the two Woods, A. E. and J. H., had agreed that J. H. should surrender the property to A. E., and thereupon A. E. turn it over to satisfy the plaintiffs' claim, and this agreement had been carried out. There can be no doubt that such an agreement, if made and executed fairly and in good faith, would have been valid against the world. In the case at bar, just what would have been such an agreement, when executed, was effected by a shorter cut.

So far as the general result is concerned, the plaintiffs, as respects the Lumber Company, would occupy a position anal-

ogous to that which they would have occupied, if, in a race of diligence, they had levied an attachment or an execution upon the property, before a similar levy by the Lumber Company.

5. It appears that before the transfer of the property in question to the plaintiffs, the St. Paul Lumber Co., a creditor of A. E. Wood, had attached the same in an action which it had commenced against him; that one Eastgate was at that time sheriff of Cottonwood county, where the attachment was made, and that, as such sheriff, he made the attachment. His term expired January 1, 1873, when he was succeeded by the defendant White. Eastgate continued to hold the writ of attachment, and the property levied upon thereunder, until he turned the same over to White, his successor in office, on or about April 1, 1873. On January 15, 1873, the St. Paul Lumber Co. recovered judgment against A. E. Wood, in the action in which an attachment was issued, and on January 27, 1873, took out execution thereon, in the usual form, and directed to the sheriff of Cottonwood county. The execution was delivered to defendant White, then sheriff of said county, who, with the knowledge and consent of the plaintiff in the action, duly endorsed upon said execution his return, certifying, among other things, that he had made diligent search and inquiry to find property belonging to the execution defendant, A. E. Wood, and that, after such search and inquiry, he was unable to find any property, personal or real, belonging to said defendant, whereon to levy said execution, and that he returned the execution wholly unsatisfied. The return was dated February 10, 1873. The transfer from J. H. Wood to the plaintiffs was made March 28, 1873. On April 1, 1873, the St. Paul Lumber Co. sued out an *alias* writ of execution on the judgment aforesaid, (the first execution having been returned to and filed in the clerk's office,) directed to the sheriff of Cottonwood county, to whom it was delivered on April 2d. On April 3, 1873, said sheriff levied said execution upon the property attached as aforesaid, which had

been delivered to him by Eastgate, his predecessor in office, and which he then had in possession, and proceeded to advertise the same for sale upon the execution, according to law. Plaintiffs thereupon replevied the same in the present action, but it was rebonded by the Lumber Co., sold upon the execution, and the avails of the sale applied upon the same judgment.

Gen. St. c. 8, § 174, provides that "every sheriff going out of office by the expiration of his term, and having any attachment, execution, or other process in his hands, which he has begun to execute by a levy upon property, shall be authorized to proceed thereon, and execute the same, and to sell and give title to the property so levied on, in the same manner as if still in office: *provided*, that if such late sheriff dies, becomes insane, removes from the state, or is in any manner unable to act, the sheriff in office shall, upon the delivery to him of such attachment, execution or other process, together with a certificate, return or memorandum of the action of the late sheriff under the same, if any, complete the execution thereof in the same manner, and with the like effect, as if such process had been originally delivered to him, and give title to any property so levied on by such late sheriff." It is claimed by the plaintiffs, under this statute, that where an attachment has been levied by a sheriff subsequently going out of office by expiration of his term, the execution issued after such expiration, in the action in which the attachment was issued, can properly be levied upon the attached property only by the person who, as sheriff, made the attachment. For two reasons, we think the construction of the statute wrong. The first reason is that whatever is authorized by that part of the section which precedes the proviso is permitted not commanded. The second reason is that it is only the particular process of attachment, execution, etc., which the outgoing sheriff has begun to execute, the execution of which he is authorized to complete. Hence, where an attachment has been begun to be executed by a sheriff who subse-

quently goes out of office by expiration of his term, he may complete whatever may remain to be done under the writ of attachment; but if, subsequently to his going out of office, an execution is issued in the action in which the attachment issued, such execution should be delivered to and executed by the sheriff then in office. The general rule is that the sheriff in office in any county is the proper person to execute all process running to the sheriff of such county. Gen. St. *c.* 8, § 167, and *c.* 66, § 264. An exception to this general rule is allowed in the particular respects mentioned in section 174, *supra.* In all cases not covered by the exception, the general rule of course controls.

The application of these views to the case before us is that the first execution was properly issued to defendant White, who was sheriff at the time of its issuance. There being no question as to the validity of the attachment, that execution should have been levied upon the attached property, which should have been sold, and the proceeds applied as provided by law. Instead of taking this course, White, the sheriff, with the knowledge and consent of the plaintiff in the execution (the Lumber Co.,) makes a return of *nulla bona.* Subsequently, the transfer before mentioned was made by J. H. Wood to the present plaintiffs, who, before the transfer, had knowledge of the return of *nulla bona,* and who, in taking the transfer, relied upon the return as having the effect to release the lien of the attachment. We are of opinion that this their reliance was well grounded. The return, made as it was with the knowledge and consent of the plaintiff in the execution, was an abandonment of the attachment. It was equivalent to a solemn declaration that the plaintiffs in the execution no longer claimed a lien by attachment upon any of the defendant A. E. Wood's property. The present plaintiffs had the right to take the execution plaintiff (the Lumber Co.) at its word, and to avail itself of the abandonment of the attachment, and thereupon to deal with the attached property as if it had not been attached at all. Upon this basis they took

the transfer, and it operated to pass the property clear of the attachment. It follows that the levy of the *alias* execution upon the attached property was unauthorized and wrongful.

Some other points are presented in the briefs of counsel, which we do not deem it necessary to discuss.

Order affirmed.