JOSEPH D. TAYLOR and another, in equity,

*vs.*

LORENZO TAYLOR.

Cumberland.    Opinion March 28, 1883.

*Corporations, officers of.    Insolvency.    Equity.    R. S., c.* 77, § *5.*

The treasurer of a corporation has no title to the money in his possession as such and owes no duties to the corporation as such, except that of safely keeping and disbursing in accordance with the directions of the proper officers. He is a mere depositary and his possession is that of the corporation for whom he acts.

The assignee in insolvency represents the creditors as well as the insolvent.

A bill in equity may be maintained by an assignee in insolvency against one holding money or property of the insolvent under a contract fraudulent and void as to creditors, when the bill seeks to have the contract annulled and the consideration restored.

This court has by force of the statute full equity jurisdiction in cases of fraud, limited only by the usage and practice of chancery courts, concurrent with courts of law or exclusive of them.

*Smith* v. *Sullivan,* 71 Maine, 155, distinguished and confirmed.

ON EXCEPTIONS.

The exceptions were to the ruling of the court in overruling a demurrer to a bill in equity. The case is sufficiently stated in the opinion.

*William L. Putnam,* for the plaintiffs, cited: *Bradley* v. *Farwell,* Holmes' Rep. 433; *Coons* v. *Tome,* 9 Fed. Rep. 533; *Koehler* v. *Iron Company,* 2 Black, 715; *Insurance Company* v. *Hill,* 60 Maine, 178; *McLean* v. *Weeks,* 61 Maine, 277; S. C., 65 Maine, 411; *Crocker* v. *Smith,* 32 Maine, 244; *Brown* v. *Whitmore,* 71 Maine, 65; *Simpson* v. *Warren,* 55 Maine, 18; *Doe* v. *Cribner,* 41 Maine, 277; *Bayard* v. *Hoffman,* 4 John. Ch. 450; *Winsor* v. *Kendall,* 3 Story, 507; *Carr.* v. *Gale,* 3 W. and M. 38; *Sawyer* v. *Hoag,* 17 Wall. 610; *Carr* v. *Hilton et als.* 1 Curtis, 230; *First Con. Church* v. *Trustees,* 23 Pick. 153; *Goodell* v. *Buck,* 67 Maine, 514; R. S., c. 77, § 5,

Cl. 4; *McLaren* v. *Brewer*, 51 Maine, 402; *E. & N. Am. Railway Co.* v. *Poor*, 59 Maine, 277; *Pratt* v. *Curtis*, 2 Lowell, 87; Bump on Bankruptcy, (10 ed.) pp. 347, 348; *Scamman* v. *Cole*, 3 Cliff. 472; *Flanders* v. *Abbey*, 6 Bissell, 19; Judge Fox, in *Goodenow* v. *Deering et als.* (not reported).

*J. and E. M. Rand*, for the defendant.

In this bill in equity, Joseph D. Taylor and William B. Tobey, assignees in insolvency of the Dirigo Slate Quarry Company, seek to recover of Lorenzo Taylor a sum of money received by him of the treasurer of said company in payment of a debt due to him from said company. The bill is against Lorenzo, individually; and is for the mere collection of a sum of money.

Respondent, by demurrer, objects that complainants have a plain, adequate and complete remedy at law.

The claim is one of which a court of common law would take cognizance in an action for money had and received. We submit that complainants have a plain, adequate and complete remedy at law; and, if so, a court of equity will decline jurisdiction. 1 Daniell's Chancery (3d Am. ed. 1865), p. 574; Story's Equity Pleadings, §§ 472, 473; *Thayer and al.* v. *Smith*, 9 Metc. 469.

We submit that the insolvent law of Maine confers upon this court no jurisdiction in equity to enforce the payment of this claim against respondent.

Under that law, the Supreme Judicial Court has " full equity jurisdiction;" the assignee has " power to maintain all suits at law and in equity," and by § 48 (under which this claim arises), " the assignee may recover the property or the value of it from the person so receiving it or so to be benefitted."

The last bankrupt act conferred upon the United States courts equally full equity powers, and the precise words of § 48, insolvent law above quoted, were used in the bankrupt law. Bump's Bankruptcy (9th ed. 1877), 795.

Yet a bill in equity to recover the value of a stock of goods was dismissed because the remedy was at law. *Garrison* v. *Markley*, 7 N. B. R. 246.

DANFORTH, J.   This is a bill in equity, in which the complainants, as assignees of an insolvent corporation, seek to set aside a payment made by the insolvent to the respondent, a creditor, as a fraudulent preference under the law, and to recover the amount so paid.   The allegations in the bill show that the respondent was not only a creditor, but also the treasurer of the insolvent corporation, and as such, within four months of the insolvency, had executed a mortgage of the company's lands, upon the credit of which and in behalf of the corporation, he borrowed the sum of seventy-five hundred dollars, and " unlawfully, inequitably and unjustly applied the whole of said seventy-five hundred dollars " in payment of his own debt against said corporation, excluding the other creditors from any share in, or benefit from said sum.   There are other allegations sufficient to show, if true, a fraudulent preference to this respondent.   It is also alleged that by reason of his acts thus set out, this respondent " became in equity trustee of said seventy-five hundred dollars, and in equity held and now holds said sum in trust for all said creditors of said corporation, and for your orators as their representatives," and that said payment was made in fraud of the other creditors of said corporation.   To this bill there is a general demurrer on the ground that, if true, " there is a plain, adequate and complete remedy at law."

That in such cases the assignees represent the creditors and are competent effectually to assert their rights to all the property of the insolvent fraudulently conveyed, cannot be, and in this case, is not denied, and the real question in issue here is, whether they have adopted the proper remedy or must be turned over to that which the law may afford them.

It is claimed that the bill may be sustained upon either of two grounds, namely :   I, a breach of trust, and II, a fraudulent preference under the insolvent law.   Under the allegations in this bill, it cannot be supported upon the first.   The respondent's possession of the money as treasurer, does not render him a trustee of the company for whom he acts.   As treasurer he is a mere depositary of the money, having no title to it, no control over, or duty in relation to it, except that of safe keeping, and

no discretion in paying out or otherwise disposing of it, but in these respects is governed and controlled by the corporation which is the real owner. The treasurer is an agent and his possession is that of his principal. *Insurance Company* v. *Hill*, 60 Maine, 183 ; *Sprague* v. *Steam Nav. Co.* 52 *id.* 592 ; *Pettingill* v. *Androscoggin R. R. Co.* 51 *id.* 370 ; Angell and Ames on Cor. 8th ed, § 312.

Very different from this is that trust over which equity has jurisdiction ; a trust which is " defined to be an equitable right, title or interest in property, real or personal, distinct from the real ownership thereof. In other words, the legal owner holds the direct and absolute dominion over the property in the view of the law ; but the income, profits or benefits thereof in his hands belong wholly, or in part, to others." 2 Story's Eq. Jurisprudence, 9th ed. § 964.

Further, this respondent as treasurer, is accountable to the company and to that alone. But to the company, and to these complainants, so far as they represent the company, he has done no wrong. There is no allegation in the bill that he did not safely keep the money, or that he made any disposition of it without the consent and direction of the proper officers. On the other hand it is claimed that the appropriation, which is the real cause of complaint, was made by the company itself. Hence there is no dereliction of duty on the part of the respondent to the company. Nor is there any such dereliction as treasurer toward the creditors. His possession of the funds of the corporation imposed upon him no duty toward them. He could not without the direction of the proper officers pay any debts of the corporation, nor could the creditors maintain any process against him for the collection of their debts, and the complainants as their representatives stand in no better condition. With the directors the case might be somewhat different. They have the control and disposition of the funds. In this respect to a great extent, they represent the company and have a duty to perform toward it which is substantially a trust and for a violation of which the proper process would unquestionably lie in favor of those directly interested, as held in *Koehler* v. *The Black River Falls*

*Iron Company*, 2 Black, 715, and other similar cases. But even here it is not intimated that any process could be sustained against the directors except by such persons as were legally interested in the property misappropriated.

It is, indeed, alleged in the bill that this respondent having received the money, it became "his duty to apply it upon equitable principles to the benefit of all the creditors of the corporation." But as already seen, this duty did not arise from his possession of the funds as treasurer, but if at all, by virtue of having received them as a creditor in payment of his debt under such circumstances as rendered it a fraud under the insolvent law upon the other creditors; and the allegations in the bill so show. Thus when that duty has arisen, if at all, the money has been misappropriated by the company, or its officers, and the respondent is no longer in possession of it as treasurer, has no duty to perform in regard to it as such, but holds it under the authority of the corporation as one of its creditors. To hold property in trust is one thing; to have obtained it by fraud is another and a very different thing. Thus all the allegations in this bill show that the liability of the respondent, if any, rests upon a fraud and not upon a trust, and the question involved is not one of duty on the part of the respondent, but of title to the money.

That the allegations in the bill sufficiently show that the respondent received the payment of his debt in fraud of the other creditors of the insolvent, is certain; and upon this branch of the case, we think the bill must be sustained.

In coming to this conclusion we lay no stress upon the provisions of the insolvent act, except so far as it declares the facts set out to be a fraud. It has been decided by this court that § 11 of the insolvent act does not determine the nature of the process to which an assignee may, or must, resort to enforce his rights to property alleged to belong to the insolvent estate, for the purposes of distribution among the creditors, against a person claiming an adverse interest. That section refers to cases involving the rights of the assignees, debtors and creditors, as among

themselves, regulating the management and distribution of the assets. *Smith* v. *Sullivan*, 71 Maine, 155.

It was further held in that case that the remedy by which an assignee should enforce his title to property against a person claiming adversely, is found in section thirty-two of the same act, by which it is provided that " any assignee shall have power to maintain in his own name all suits in law and in equity, for the recovery and preservation of the insolvent estate." This does not settle the question as to the precise remedy to be resorted to, that is, whether it shall be in law or equity, but leaves that to be determined by the general principles applicable to the facts of each case. *Smith* v. *Mason*, 14 Wallace, 419 ; *Marshall* v. *Knox*, 16 *id.* 551.

In this case the respondent, though alleged to have obtained the property in question, as a creditor and through a fraudulent preference, is, nevertheless, an adverse claimant and the suit is simply for the recovery of the insolvent estate.

Nor do we mean to say that the assignee might not have had a remedy at law and possibly a plain and adequate one, and in this case if the facts alleged were proved in an action at law the amount recovered would clearly be the same as in equity. Still the method of proof and the form of the judgment is somewhat different.

The ground of our decision is that in most cases resting upon fraud courts of equity and of law have concurrent jurisdiction, unless controlled by statute provision, and in such cases the complainant may have his election as to which he will resort.

Story in his work on equity jurisprudence, ninth ed. § 184, says, " It is a rule subject to few exceptions, that courts of equity exercise a general jurisdiction in cases of fraud, sometimes concurrent with, and sometimes exclusive of other courts . . . and with the exceptions of wills as above stated, courts of equity may be said to possess a general, and perhaps universal, concurrent jurisdiction with courts of law in cases of fraud, cognizable in the latter ; and exclusive jurisdiction in cases of fraud beyond the reach of the courts of law."

Daniell, in his Chancery Practice, vol. 1, p. 576, says, "Among other cases in which courts of equity and courts of law entertain concurrent jurisdiction, are those arising upon frauds; therefore where fraud is made the ground for the interference of this court, a demurrer will not hold."

In Massachusetts the decisions are somewhat different, as there, in cases of fraud as well as in others, it is provided by statute that the jurisdiction in equity shall not attach when there is "a plain, adequate and complete remedy at law;" the courts holding that the statute limits the rule, as to jurisdiction, applicable to courts having full equity powers. *Pratt* v. *Pond*, 5 Allen, 59; *Law* v. *Thorndike*, 20 Pick. 317; *Thayer* v. *Smith*, 9 Met. 469 : *Suter* v. *Matthews*, 115 Mass. 253.

On the other hand the courts of the United States notwithstanding a provision in the judiciary act in regard to their equity jurisdiction the same as that in Massachusetts, maintain the doctrine of the English courts as laid down by Story and Daniell, as well as other writers, holding that this clause in the judiciary act is "merely affirmative of the general doctrine of courts of equity and in no sense intended to narrow the jurisdiction of such courts." *Bean* v. *Smith*, 2 Mason, 270; *Robinson* v. *Campbell*, 3 Wh. 221; *U. S.* v. *Howland*, 4 Wh. 115; *Smith* v. *McIves*, 9 Wh. 532; *Jones* v. *Boller*, 9 Wall. 369.

In our state we have no occasion to enquire which of these two courts is in the right, or into the force and effect of the statutory clause limiting the jurisdiction of the equity courts to those cases where there is no complete and adequate remedy at law, for the reason that in cases of fraud our statutes contain no such clause. In the revision of 1841, there was such a clause made applicable as in Massachusetts, to all classes of cases cognizable in equity. In the revision of 1857, that clause was omitted, thus giving to the courts full equity powers in all cases in which they had equity jurisdiction.

In 1874, by chapter 175 of the acts of that year, ch. 77, § 5, of R. S., of 1871, was amended by adding the following specification, "Tenth, and shall have full equity jurisdiction, according to the usage and practice of courts of equity, in all

other cases where there is not a plain, adequate and complete remedy at law." As this is but an addition to the previous specifications named in § 5, it is evident that the limiting clause applies only to the additional jurisdiction herein given and in no respects affects that given before.

Thus this court has by force of the statute, full equity jurisdiction in cases of fraud, limited only by the usage and practice of chancery courts. This as we have seen is concurrent with the courts of law, or exclusive of them, "subject" as Judge STORY says, " to few exceptions." What those exceptions are we find in the note to the section of Story's Equity Jurisprudence before cited. These are " cases of warranties, misrepresentations, and frauds on the sale of personal property," and other like cases in which there is no prayer for rescinding the contract and a return of the specific property, but in which the only object to be obtained, is the recovery of damages for the injury suffered. It is very evident that this case does not come within any of the exceptions mentioned or any others which can take it, out of equity jurisdiction. On the other hand it involves principles which render it appropriate for such jurisdiction. The bill asks for a full answer to the charges therein made. This answer the plaintiffs are entitled to, for it is evident that as to a portion of them, at least, the defendant must have better knowledge than can be found elsewhere. Here, too, is alleged a payment which is in effect a contract and which the plaintiffs seek to have annulled and the consideration restored. True, this consideration was money, but, though the same money may not be restored, it is not damages which are asked for, but a specific sum which was in the treasury and therefore the property of the corporation, and obtained by a fraudulent contract. It is only the recovery of damages as such, when that is the only object to be obtained, which is objectionable in a court of equity. But the mere fact that the property to be recovered is money is not objectionable especially when the contract upon which it was obtained is first to be rescinded on the ground of fraud.

That the proper remedy in a case like this is in equity, is sustained by *Simpson* v. *Warren*, 55 Maine, 18.

The conclusion to which we have arrived, is in no respect inconsistent with that of *Smith* v. *Sullivan, supra.* That was decided upon the facts set out, independent of any allegations of fraud, with no contract to rescind, and presented only a question of damages or of title which could properly be settled in an action of replevin. This case is presented upon a contract the validity of which depends upon the charges of fraud.

> *Demurrer overruled. Defendant to answer.*

APPLETON, C. J., BARROWS, VIRGIN and PETERS, JJ., concurred.