NEW PRAGUE MILLING COMPANY v. MICHAEL SCHREINER.[1]

November 15, 1897.

Nos. 10,543—(67).

**Insolvency—Sale by Assignee—Purchaser's Attempt to Avoid Insolvent's Mortgage.**

The grantee of a purchaser at an assignee's sale in insolvency proceedings cannot avoid a mortgage placed upon the property before the assignment by the insolvent debtor, upon the ground of fraud or want of consideration in the inception of the mortgage, where the assignee advertises the property for sale subject to the mortgage, accepts bids on such condition, and by consent of the court sells accordingly.

Appeal by plaintiff from a judgment of the district court for Le Sueur county in favor of defendant, pursuant to findings and an order for judgment of Cadwell, J. Affirmed.

*Wm. S. Moore* and *Southworth & Coller*, for appellant.

Appellant derives its title through Simmer's assignee under the statute of 1881, as amended in 1889, by sequestration thereunder and in the right of the creditors. Thompson v. Bickford, 19 Minn. 1 (17), and cases cited at bottom of page 5; Campbell v. Jones, 25 Minn. 155; Tupper v. Thompson, 26 Minn. 385; Walsh v. Byrnes, 39 Minn. 527; Hanson v. Bean, 51 Minn. 546; Byrnes v. Volz, 53 Minn. 110; Leqve v. Stoppel, 64 Minn. 74. There was never legally any such mortgage and the defendant must suffer for his deliberate participation in the fraud that vitiated and avoided it. Sands v. Codwise, 4 Johns. 536; Broom, Leg. Max. 279, et seq.; 1 Story, Eq. Jur. § 298; Kerr, Fraud, 374; Smith v. Hubbs, 10 Me. 71; St. John v. Benedict, 6 Johns. Ch. 111; Miller v. Marckle, 21 Ill. 151, citing other cases.

The advertisement was not a sale, and the notice of apparent incumbrance could not support the bar and estoppel found in favor of the defendant's fraudulent mortgage. Bigelow, Est. 508; Thompson v. Morgan, 6 Minn. 199 (292); Ross v. Worthington, 11 Minn. 323 (438); Calkins v. Copley, 29 Minn. 471. The advertisement is too in-

[1] Reported in 72 N. W. 963.

definite and uncertain to create or sustain an estoppel in favor of the defendant and his fraudulent mortgage. Calkins v. Copley, supra; Thompson v. Morgan, supra; Ross v. Worthington, supra; Hackensack v. De Kay, 36 N. J. Eq. 548.

The creditors being without restrictions and the deed of assignment once made and accepted by the assignee, who then qualified and entered upon his duties, there was no one to go against the defendant's fraudulent mortgage. Merrill v. Ressler, 37 Minn. 82; Chamberlain v. O'Brien, 46 Minn. 80. The assigned property was in custody of the law and hence to be administered in accordance with the true spirit of the law. In re Mann, 32 Minn. 60; Simon v. Mann, 33 Minn. 412; King v. Remington, 36 Minn. 30, 31, 32; Colie v. Jamison, 4 Hun, 284; Thomas v. Foote, 46 Minn. 240; Farmers v. Minneapolis, 35 Minn. 543; Johnson v. Laybourn, 56 Minn. 332, see 334; Hackensack v. De Kay, supra. The assignee's sale was for the creditors and in their right by virtue of the statute. Farmers v. Minneapolis, supra; Jackson v. Holbrook, 36 Minn. 498, 499. A purchaser from an assignee for the benefit of creditors has the same rights as the assignee himself to avoid a mortgage fraudulent as to the creditors represented by him. Campbell v. Jones, supra; Hastings v. Heller, 47 Minn. 71. Such purchaser's grantee for a valuable consideration has a similar right. Thompson v. Morgan, supra; Yager v. Merkle, 26 Minn. 429.

*H. J. Peck* and *W. C. Odell*, for respondent.

The mortgage was good, and created a valid lien upon the premises as between the parties and as to all the world except creditors in fraud of whose rights it was executed. Flower v. Cornish, 25 Minn. 473; Mann v. Flower, 25 Minn. 500; 1 Jones, Mort. § 632. In the absence of the insolvency proceedings, the creditors had their election to recognize the mortgage as a valid lien or attack its validity, and so also had (after the assignment) the assignee, as representing the rights and interests of the creditors. G. S. 1894, § 4233; Farmers v. Minneapolis, 35 Minn. 543. By neglecting to attack the validity of the mortgage and (as the representative of the creditors) the insolvent making conveyance subject to the mortgage, the assignee elected to recognize the mortgage as a valid lien and incum-

brance. The mortgage became and was a valid lien accordingly, notwithstanding its fraudulent character as to the creditors of the mortgagor. Freeland v. Freeland, 102 Mass. 475; Butler v. Hildreth, 5 Metc. (Mass.) 49; Snow v. Lang, 2 Allen, 18; Harvey v. Varney, 98 Mass. 118; Bean v. Brackett, 34 N. H. 102, 122. The purchaser in such case takes the property subject to the incumbrance which the assignee has not chosen to avoid. Taylor v. Taylor, 74 Me. 582; Snow v. Lang, supra. The purchaser took the premises charged with the payment of the mortgage debt. 1 Jones, Mort. § 736; Dembitz, Land Tit. 1018.

BUCK, J.

The defendant, Michael Schreiner, is the executor of Peter Schlitz, against whom this action was originally commenced, but upon his death Schreiner was substituted as defendant in the place of the deceased.

It appears that on June 2, 1890, one Michael Simmer was insolvent, his indebtedness then and for some time prior thereto amounting to more than $100,000, and the value of his unexempt property not then exceeding the sum of $40,000. Simmer was a resident of the county of Scott, in this state, and on June 2, 1890, he made an assignment of his property to one Julius A. Ackerman for the equal benefit of all his bona fide creditors who should file releases as provided by the insolvent laws of this state, which assignment was duly filed in the office of the clerk of the district court in Scott county, and a certified copy thereof duly filed and recorded in the office of the register of deeds of Le Sueur county on June 6, 1890. Ackerman duly qualified as assignee and took possession of all of the unexempt property of Simmer, including that in controversy herein, and sold and disposed of the same, and paid the proceeds to the creditors of said Michael Simmer under the orders of the district court in pursuance of the insolvency law, and was duly discharged as assignee.

The real property in question is situated in Le Sueur county, in this state, and on June 1, 1889, was owned in fee, and was in the possession of Simmer and so continued until he made the assignment to Ackerman, in June, 1890.

On June 5, 1889, Michael Simmer executed and delivered to Peter Schlitz his promissory note for $11,000, and to secure the payment

thereof he and his wife executed a mortgage upon the land in controversy described in the complaint, which mortgage was duly recorded June 12, 1889, in the office of the register of deeds of Le Sueur county. There being default in the payment of said note and mortgage, the mortgage was duly foreclosed, and the premises sold to Peter Schlitz on January 13, 1894, for the sum of $14,536.25, and a certificate duly executed to said Schlitz and duly recorded. This mortgage was in fact made without any consideration whatever, and for the purpose and with the intent of defrauding the creditors of the mortgagor.

After the assignee took possession of the assigned property, by order of the district court he duly advertised for bids for all such property, which consisted of various pieces of real estate and a large amount of personal property. The property in question in the notice of the assignee's sale was described as follows:

"The Simmer flouring mill and elevator in New Prague, Minn., complete with the latest improved machinery throughout and all in perfect order, worth $40,000, subject to mortgage of $15,500."

After receiving bids the assignee made report to the court, and it thereupon made an order that all interested creditors show cause why such bids should not be accepted, and said property sold in accordance with said offer and bids, which order was served upon all of the creditors of said insolvent. Upon the hearing of this order a majority of the creditors appeared, and upon a hearing duly had the court ordered that such bids be accepted, and upon payment of the amount of said bids that such sale be in all things confirmed.

By the terms of this order the assignee was authorized to insert in his conveyances, or in an independent contract, such conditions as he might deem necessary to protect and preserve the rights of creditors in case any of the incumbrances upon the lands specified in the advertisement should prove to be void or voidable for any reason as to said assignee or said creditors. One John Vanderhorck was the bidder and purchaser of said property above described, together with a large amount of other property offered in the assignee's notice of sale, for which he paid the sum of $19,300; it not appearing just what he paid for the property in controversy. Nothing was in-

serted by the assignee in the deed or any independent contract in regard to protecting or preserving the rights of creditors as to any incumbrances upon any of the lands sold and described in the deed. Simmer and wife on August 21, 1890, by quitclaim deed conveyed their interest in the premises to Vanderhorck, and on September 5, 1891, in consideration of $4,500 he conveyed the premises to the plaintiff.

The creditors of Michael Simmer who had filed their claims against him with due proof accepted their dividends, and filed releases as provided by law.   The sum of $19,300, for which the assignee sold the property described in the notice of sale to Vanderhorck, was its full value, regardless of any mortgages or incumbrances thereon.   The plaintiff, claiming under Vanderhorck as purchaser at the assignee's sale, contending that the mortgage from Simmer and wife to Schlitz was made without consideration and with intent to defraud the creditors of the mortgagor, brings this action for the purpose of having such mortgage and the proceedings had in the foreclosure thereof adjudged null and void, and the premises in controversy adjudged clear and free from any lien or incumbrance of said mortgage and said foreclosure proceedings.

The allegations of the complaint attacking the validity and bona fides of the mortgage and the foreclosure proceedings therein, and the claim of title made by the plaintiff, were put in issue by the answer.   The action was tried by the court, and there was but little, if any, controversy upon the trial as to the facts; and the court, as its conclusion of law, held that the plaintiff was not entitiled to any relief in this action, and ordered judgment in favor of the defendant. The main point in the case, then, is this:   Can the grantee of a purchaser at an assignee's sale in insolvency proceedings avoid a mortgage placed upon the property before the assignment by the insolvent debtor, upon the ground of fraud or want of consideration in the inception of the mortgage, where the assignee advertises the property for sale, and sells it subject to the mortgage, by order of the court?   We answer this question in the negative.

We may concede that the mortgage was voidable as to the creditors of Simmer if they or the assignee had elected so to treat it.   In the absence of the insolvency proceedings, the creditors could recog-

70 M.—9

nize and treat the mortgage as a valid lien, or they could attack its validity, if they elected to do so; and under G. S. 1894, § 4233, the assignee representing the rights and interests of the creditors of the debtor has all the rights which such creditors would have to avoid such fraudulent conveyances and transfers. Merrill v. Ressler, 37 Minn. 82, 33 N. W. 117; Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696. As between the parties to this mortgage it was valid, however fraudulent it might have been as to creditors.

Standing alone, the execution and delivery of this mortgage interfered with and injured no one, and it was only by its hindering, delaying, or defrauding creditors that they had the right to interfere to set it aside. But neither they nor their representatives nor the parties to it are seeking to avoid it. On the contrary, several of the creditors representing more than $30,000 of claims appeared before the court at the time of the hearing of the order to show cause, and made no objection to the advertisement for bids, nor the order of the court permitting the assignee to accept the same, which advertisement contained the provision that the property in question would be sold subject to the mortgage thereon; and they filed releases and accepted dividends. The assignee took no steps to avoid the mortgage or the foreclosure proceedings thereon, and he testified that he sold the premises and his interest therein subject to the mortgage thereon. His interest was that which the insolvent had. That interest he had a right—as it was his duty—to sell, and the court found that he got all the property was worth, irrespective of the mortgage or incumbrance. Having sold all the interest which he had in the premises, his duty as to the property sold ended. There is no suggestion that he was guilty of fraud or misconduct in the transaction, as none could well be, examined in the light of the proceedings before the court on the order to show cause.

There was no intent on the part of the assignee to confer on the purchaser at the sale the right or power to avoid the fraudulent conveyance made by the insolvent; on the contrary, the evidence and finding of the court irresistibly lead to the conclusion that no right passed with the property to the grantee of the assignee as a matter of course. The creditors of the insolvent are not complaining, and, if the mortgage is to be avoided, it would seem a matter of justice

that they should be the ones to have the proceeds, and not a mere purchaser who took with notice of the incumbrance, and that the property was sold subject to it. It seems to us as a sound principle of public policy that such purchasers at an assignee's sale ought not to be permitted to speculate upon claims of this kind; that the assignee should not allow the interests or rights of creditors to be jeopardized by an uncertain method of notice of sale, whereby he might sell valuable property of the insolvent for a mere trifle, with fraudulent incumbrances thereon, and then let the purchaser avoid the sale and enjoy the proceeds, with but little consideration paid therefor, and creditors be thereby deprived of their just dues.

From the facts appearing in this case it seems clear that the assignee elected to treat the mortgage as a valid lien notwithstanding its fraudulent character as to the creditors of the mortgagor, and, having thus affirmed it, it stands good as between the parties to it. See Freeland v. Freeland, 102 Mass. 475; Twite v. Stevens, 98 Mass. 307; Bean v. Brackett, 34 N. H. 122; Taylor v. Taylor, 74 Me. 582. The purchaser at the assignee's sale under the notice of sale took the land charged with the incumbrance of the mortgage as expressly as though he had the payment of the debt himself. While not personally liable for the debt, the land is chargeable with the incumbrance, and he cannot be allowed to set up a defense as to its validity. Jones, Mort. (4th Ed.) § 736. Our conclusion is that the judgment of the trial court should be affirmed.

So ordered.

CANTY, J.

I concur in the foregoing opinion except so far as it holds that by selling the property subject to the mortgage "the assignee elected to treat the mortgage as a valid lien, notwithstanding its fraudulent character as to creditors of the mortgagor." In my opinion, it was not in the power of the assignee to make any such binding election; and, if he knowingly attempted to do so, it would be good ground for his removal and the appointment of an assignee who would proceed to redress the wrong attempted to be perpetrated by the assignor. By selling the property expressly subject to the mortgage, the assignee reserved from the purchaser the right to assail the mortgage

as being without consideration or as being fraudulent as to creditors. If the assignee afterwards discovered that the mortgage was without consideration, or fraudulent as to creditors, he would have a right to proceed against the mortgagee in equity to be subrogated to the lien of the mortgage for the benefit of creditors. It is not necessary to determine whether he could do this if he made such discovery before the sale, but certainly he could not even then bind the creditors by attempting to ratify the fraud by a sale of the property subject to the mortgage.