J. N. BROWN v. ALFRED SCHEFFER and Another.

April 22, 1898.

Nos. 11,054—(108).

Insolvency — Preference — Fraudulent Conveyance — Action against Creditor Purchasing from Fraudulent Vendee—Rights of Assignee in Insolvency.

On March 8, 1893, J. F. F., while heavily indebted to several persons, and being then insolvent, transferred a large stock of goods to his brother M. G. F., for the fraudulent purpose of avoiding the payment of the debts of the former, but not with the view to giving a preference to any of his creditors. Among these creditors were defendants, to whom he owed $1,518.22, and this debt M. G. F. paid in full, by turning over to them the entire stock of goods which he had purchased of J. F. F. Subsequently the plaintiff was duly appointed assignee of the estate of said J. F. F., and brought suit in replevin against defendants to recover the stock of goods so turned over to the defendants. *Held*, that he was not entitled to maintain such action.

Appeal by plaintiff, as assignee in insolvency of John F. Franke, from a judgment entered in the district court for Faribault county in favor of the defendants pursuant to the findings and order of Quinn, J. Affirmed.

*S. W. Graham, Hughes & Brewster* and *E. F. Lane,* for appellant.

The defendants had full and actual knowledge of the fraudulent character of the sale of goods by John F. Franke to Mike G. Franke, and their manifest purpose in taking the note of the fraudulent vendee for the debt of the vendor, and then immediately surrendering it and taking back a bill of sale of the goods from the fraudulent vendee, in the absence of the fraudulent vendor, was to hinder, delay and defraud other creditors of John F. Franke. The transaction was therefore of no effect as a transfer and was void as against the creditors represented by the assignee. Carter v. McDonald, 68 Wis. 196; La Crosse v. Wilson, 74 Wis. 391; Lyons v. Leahy, 15 Ore. 8. Any transfer or sale of the property of an insolvent debtor, made with the intent to hinder, delay and defraud his creditors, with knowledge on the part of the purchaser of such in-

tent, or of sufficient facts of a suspicious nature as would naturally put a prudent person on inquiry, is wholly void even if made for cash. Gumberg v. Treusch, 110 Mich. 451. Such a sale cannot be held good for any purpose, even for reimbursement of the consideration paid. Leqve v. Stoppel, 64 Minn. 74; Swinford v. Rogers, 23 Cal. 233. A purchaser from a fraudulent vendee, in order to take any title must be a bona fide purchaser without notice, as well as one for a valuable consideration. Bump, Fraud. Conv. § 492; 1 Story, Eq. Jur. §§ 381, 434.

*Morphy, Ewing & Gilbert* and *F. E. Putnam,* for respondents.

The record in this case contains only the judgment roll, consisting of pleadings, findings and judgment. The only question presented, therefore, is whether the findings justified the conclusions of law. Brigham v. Paul, 64 Minn. 95; Pattridge v. Jessup, 69 Minn. 33. In this state the insolvent law does not render preferences void except in proceedings under it. Berry v. O'Connor, 33 Minn. 29; Mackellar v. Pillsbury, 48 Minn. 396. And under this law it is essential, in order to avoid a preference, to prove that the debtor made the conveyance with a view of giving a preference to the creditor upon a pre-existing debt. The appellant therefore cannot bring this case within the provisions of the insolvent law, because the court below found that the sale to the defendants was not made with a view of giving a preference to defendants or to any creditors. If, then, by the transaction the defendants did obtain a preference, the same must be judged by the common law, which allowed a debtor to give such preferences. Butler v. White, 25 Minn. 432.

It is the law in this and other states, where no local statute intervenes, that a sale of goods by an insolvent merchant to a creditor is valid between the parties, and such insolvent may prefer a creditor to the extent of his claim and pay him in goods at a fair price, however it may affect his other creditors. The creditor so preferred may lawfully receive the preference, although fully aware of the effect of the transaction and fully apprised of his debtor's intention as to others, provided only that he takes it in good faith as payment of his debt. And this is the law where the preference is made

by a fraudulent vendee in payment of a debt of a fraudulent vendor. Dolan v. Van Denmark, 35 Kan. 304; Butler v. White, supra; Webb v. Brown, 3 Oh. St. 246.

The action cannot be maintained as an action under the statutes of Elizabeth, for equity will not interfere to set aside a transaction of this kind unless it be made to appear affirmatively that the creditors have been substantially injured by the transfer. Nash v. Geraghty, 105 Mich. 382; Buford v. Keokuk, 3 Mo. App. 159; Bump, Fraud. Conv. § 552. In this case the findings utterly fail to show that the creditors have in any respect been defrauded or injured, so that no foundation is laid for the interference of a court of equity. Oakford v. Dunlap, 63 Ill. App. 498; Head v. Bracht (Tex. Civ. App.) 40 S. W. 630; Bleiler v. Moore, 94 Wis. 385; Grosshans v. Gold, 49 Neb. 599.

BUCK, J.

This is an appeal from a judgment of the district court of Faribault county entered in said county upon the findings of fact by the trial judge. The evidence is not returned, and the sole question is whether the conclusions of law are justified by the facts found.

On March 8, 1897, and for a long time prior thereto, one John F. Franke was a harness maker, and engaged in such business at Blue Earth City, in this state, and kept a stock of goods of the kind usually kept by harness makers, of the value of $2,000, which stock is the personal property in controversy in this action. On said last-named day said John F. Franke was indebted on account of said business to a large number of persons, including the defendants, and to the latter he owed the sum of $1,518.22. At such time Franke was wholly insolvent, and on that day, for the purpose of avoiding the payment of said debt, he sold said stock of goods to his brother Mike G. Franke, by a written bill of sale, and took in payment therefor the promissory notes of his said brother Mike G. Franke, for the sum of $3,500, payable to said John F. Franke; that being the amount he was to pay for said stock of goods. Mike G. Franke took possession of said stock of goods and conducted said business up to March 16, 1897. The sale was made by John F. Franke to his brother Mike G. Franke for the purpose, on the part

of both of them, of enabling said John F. Franke to avoid the payment of said debts, said Mike G. Franke well knowing of the insolvency of his brother at the time of such sale.    This sale was not made, however, by John F. Franke with a view to give any of his creditors a preference over any other of his creditors.

While said Mike G. Franke was in possession of said stock of goods and conducting said business, and on March 16, 1897, he, together with his mother, Koline Franke, for the purpose of paying and settling the defendants' claim of $1,518.22 against John F. Franke, executed to defendants their promissory note for that amount, payable on demand, and defendants accepted said note in full settlement and payment of said claim.    Thereafter, but on the same day, the defendants purchased from said Mike G. Franke the said stock of goods now in controversy, in payment for which the defendants canceled and delivered to said Mike G. Franke the said note of $1,518.22, and thereupon the defendants immediately took possession of said stock of goods.    At the time of this transaction the defendants knew that said stock of goods had previously been sold by the said John F. Franke to Mike G. Franke for the purpose of assisting the said John F. Franke in avoiding the payment of his just debts and liabilities, and that said John F. Franke was then insolvent.

On March 20, 1897, the said John F. Franke, who had thus continued to be and was then insolvent, made an assignment to the plaintiff, in due form, of all his property not exempt for the benefit of his creditors.    The plaintiff, as such assignee, replevied said stock of goods, and has the same in his possession, save such portion thereof as he may have sold.    This proceeding was instituted upon the theory that the defendants obtained the payment of their debt against John F. Franke with intent to obtain a preference over the other creditors of said Franke, and that both Frankes were parties to the transaction.    Unfortunately for the plaintiff's contention, the trial court found that, while John F. Franke sold said stock of goods to Mike G. Franke for the fraudulent purpose of avoiding the payment of his debts, yet the sale was not made with the view to giving a preference to any of his creditors.

That the transaction between the brothers was a fraudulent one

must be conceded, and, while it doubtless might have been set aside by the proper parties and by proper proceedings, yet, as between the Frankes, it was valid, however fraudulent it might have been as to creditors. New Prague v. Schreiner, 70 Minn. 125, 72 N. W. 963. While Mike G. Franke held the title to this property as between him and his brother, he turned the same over to these defendants, who were creditors of John F. Franke, in full payment of his indebtedness to them, and upon an indebtedness existing when he sold the property to Mike G. Franke. If John F. Franke had turned the property over to the defendants while he still owned it, in payment of this indebtedness, without intent to give them a preference, the sale would have been valid. And if the defendants had attached this same property while in the hands of Mike G. Franke, upon the ground of its fraudulent sale from John F. Franke to his brother, about which there cannot be any reasonable doubt, then why did they not have the right to take the same in payment of a just debt which they held against John F. Franke?

Under the finding of the court, John F. Franke intended to cheat, hinder, and delay all of his creditors, not any particular one. If creditors other than these defendants had been vigilant, and taken steps to avoid the sale between the brothers, the property would doubtless have been secured and applied pro rata among them in payment of their debts, but this they did not do. If the defendants have been fortunate in securing full payment of their claim, it was because they were vigilant, and not because the debtor gave them a preference. At least the court so found, and there is no evidence in the record to show error in the finding.

We do not wish to be understood as holding that, if any creditor had attached these goods in the hands of Mike G. Franke, under the insolvent law other creditors could not have taken steps to have a receiver appointed, the attachment dissolved, and the property applied pro rata to the payment of the debts of the creditors of John F. Franke. But such steps were not taken, and instead thereof the assignee seeks to recover from these creditors the goods which they took in payment of their just debts without the debtor intending to give them a preference. It may be that in fact John F.

Franke did through the transaction with his brother intend to give defendants a preference over other creditors, but the evidence is not returned, and the trial court found otherwise, and by that finding we must abide.

As we have already stated, the sale was valid as between the brothers, and, while it might have been voidable as against the legal process of creditors, yet the doctrine which we find from authorities seems to be that a fraudulent vendee can do with the property all that the vendor might have done had he retained the goods. See Butler v. White, 25 Minn. 432; Webb v. Brown, 3 Oh. St. 246; Dolan v. Van Denmark, 35 Kan. 304, 10 Pac. 848. If the rights of other creditors seem to conflict with this rule, our answer is that ordinarily the diligent creditor is entitled to the fruits of his diligence. John F. Franke might himself have turned this identical property over to the defendants in payment of their debt, if done without any intent to give them a preference. There is a moral, as well as a legal, obligation upon the part of a debtor to pay his just debts; and when he does so out of his own means, or through a fraudulent vendee, without intending to give one creditor a preference over another, upon sound principles it ought to be held valid.

Judgment affirmed.