JOHNSON v. TRUST COMPANY OF AMERICA.

(Circuit Court of Appeals, Eighth Circuit. October 9, 1900.)

No. 1,342.

1. EQUITY—SEPARATE APPEAL.

All parties interested in a decree must be given an opportunity to be heard, before an appellate court will consider it. One of several defendants who desires to appeal must give notice to his co-defendants to join him, and they must refuse, before his separate appeal is maintainable; but no formal notice is required, and, if it fairly appears from the record that the co-defendants were notified of the appeal and declined to join in it, the separate appeal may stand. The facts that one of several co-defendants took her appeal in open court in the presence of all the parties at the time the decree was rendered, and that they all appeared by counsel in the appellate court, are sufficient evidence that the co-defendants received notice of, and declined to join in, the appeal.

2. BONA FIDE CREDITOR MAY SECURE UNASSAILABLE LIEN FROM FRAUDULENT VENDEE.

A creditor who is aware that his debtor has conveyed his property to a third party for the purpose of defrauding his creditors, but who has no intent to aid him in his fraud, may, with his consent, procure from the fraudulent vendee payment of his just claim from the property fraudulently conveyed, or a lien upon that property to secure his just claim, which will be unassailable by the other creditors of his debtor.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Kansas.

This suit involved a controversy between a judgment creditor and a mortgagee of real estate over the priority of their respective liens. The appellee, the Trust Company of America, obtained a judgment on September 16, 1893, for $11,502.20, in the district court of Shawnee county, in the state of Kansas, against Erasmus Bennett and Edwin R. Bennett, upon a debt which they incurred in the year 1891. On or about January 3, 1893, Erasmus Bennett and Edwin R. Bennett conveyed the real estate in controversy, which was situated in Shawnee county, Kan., and which they then owned, to Clara E. Bennett, the wife of Erasmus Bennett; and the deeds which evidenced this conveyance were filed for record in the office of the register of deeds of Shawnee county on March 12, 1894. During all the time between the year 1890 and August 9, 1895, Erasmus Bennett and Edwin R. Bennett were indebted to John P. Johnson in the sum of more than $20,465.08. This indebtedness was evidenced by their promissory notes. Upon one of these notes, which amounted to more than $26,000, Clara E. Bennett was either a joint maker or a surety. On or about August 10, 1894, in order to secure the payment of some of this indebtedness, Clara E. Bennett made her individual note for $20,465.08, dated August 8, 1894, payable to John P. Johnson, and with her husband, Erasmus Bennett, made a mortgage upon the real estate in controversy to secure the payment of this note. This mortgage was filed for record in Shawnee county on August 10, 1894. On February 13, 1895, the Trust Company filed a creditors' bill in which it set forth the facts above recited, and averred that the deeds from Erasmus Bennett and Edwin R. Bennett, dated January 3, 1893, were not made until within 30 days prior to March 12, 1894; that they were without consideration, and were made for the purpose of defrauding the complainant and the other creditors of the grantors named therein; that the mortgage to Johnson was without consideration, and made to aid and assist the Bennetts in covering up their property and defrauding their creditors,—and prayed that the deeds to Clara E. Bennett and the mortgage to John P. Johnson might be set aside and decreed to be void, and that the real estate therein described might be sold, and the proceeds thereof applied to the payment of the judgment of the Trust Company. The defendant, Johnson, answered that Erasmus Bennett and Edwin R. Bennett were indebted to him in amounts largely in excess of the $20,465.08 secured by his mortgage; that the note and mortgage made by Clara E. Bennett were given to secure a bona fide indebtedness of the said Bennetts to him,—and denied that he had ever been a party to any scheme to cover up or withdraw from the reach of their creditors any of the property of the Bennetts, or to in any way defraud them. A replication was filed, and testimony was taken upon the issues presented by these pleadings. John P. Johnson died, and the suit was revived against Virginia M. Johnson, as executrix of his last will and testament. A final hearing was had, and on October 3, 1899, a decree was rendered in favor of the complainant for the relief demanded in its bill. On the same day, in open court, and in the presence of all the parties to the suit, Virginia M. Johnson, as executrix, prayed and was allowed an appeal from this decree, and it is by this appeal that the questions presented in this case are raised.

E. F. Ware (Charles S. Gleed, James W. Gleed, D. E. Palmer, and J. L. Hunt, on the brief), for appellant.

George H. Whitcomb (Frederic D. Fuller, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A motion is made to dismiss the appeal on the ground that the co-defendants of the appellant have not joined in it, and there was no summons and severance. But a summons and severance are not in-

dispensable to the maintenance of an appeal by one of the parties to a decree, if it fairly appears from the record that the parties who might have joined have been notified to do so and have refused. Trust Co. v. McClure, 78 Fed. 211, 213, 24 C. C. A. 66, 68, 49 U. S. App. 46, 51; Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953. The rule is that all parties who appear to have an interest in the decree must be given an opportunity to be heard, before an appellate court will enter upon its consideration. The purpose of this rule is to avoid repeated hearings upon the same decree and record, and to enable the successful party to enforce his decree against those who do not desire to have it reviewed. In the case at bar that purpose has been fully accomplished. This appeal was taken by and allowed to the appellant alone, in open court, in the presence of the parties, at the same time that the decree was rendered, and all the parties to the suit have appeared by counsel in this court upon the appeal. These facts constitute sufficient evidence that the defendants to this suit who did not join in it had notice of the appeal and declined to join, and, as all the parties to the suit are now represented by counsel in this court, the motion to dismiss the appeal is denied.

Turning to the merits of the case, the record establishes these facts: The judgment of the Trust Company against Erasmus Bennett and Edwin R. Bennett was rendered in the district court of Shawnee county on September 16, 1893, and evidenced a just indebtedness incurred by them in the year 1891. The deeds of the property in controversy from Erasmus Bennett and Edwin R. Bennett to Clara E. Bennett were executed and delivered to the grantee on or about January 3, 1893, so that the judgment of the Trust Company constituted no lien upon the real estate in question. These deeds were made for the purpose of covering up the property of the grantors, and were fraudulent and voidable as against their creditors. The note for $20,465.08, dated August 8, 1894, made by Clara E. Bennett, and payable to John P. Johnson, was given to secure a portion of a bona fide indebtedness of Erasmus Bennett and Edwin R. Bennett to John P. Johnson for an amount in excess of $21,000, for more than $21,000 of which Clara E. Bennett was a surety. The mortgage upon the real estate in controversy made by Clara E. Bennett and her husband, Erasmus Bennett, on August 10, 1894, was made to secure that portion of this indebtedness evidenced by the note of Clara E. Bennett, dated August 8, 1894. John P. Johnson procured this note and mortgage to secure a portion of a bona fide indebtedness of the Bennetts to him, and he did not take this note and mortgage for the purpose or with the intent to aid the Bennetts in defrauding or cheating any of their creditors, or in placing their property beyond the reach of the process of the courts. There is a spirited contest in the evidence over the question whether or not Johnson knew, or had such notice as would charge him with knowledge, that the deeds of January 3, 1893, to Clara E. Bennett, were made with intent to defraud the creditors of the grantors. In view of the facts which have already been recited and found to be established in this case, it is unnecessary to determine this question. Conceding, but not deciding, that Johnson had notice or knowledge of the fact that the deeds to Clara E. Bennett were made to

defraud the creditors of the grantors, how could that fact deprive him of the right to secure the just claim which they owed him? If those deeds were fraudulent as to creditors, they were not void; they were merely voidable; and until some creditor attacked them the title to the property stood unchallenged in the grantee. That title had passed to her before the judgment of the Trust Company was entered. That judgment was no lien upon that title. Johnson had the right to sue the Bennetts upon his claim, to issue and levy a writ of attachment upon this real estate, and in this way to fasten a lien upon it superior to the judgment of the Trust Company. He had the right to sue the Bennetts, to take judgment against them, and then to file his creditors' bill to set aside these conveyances, and in that way to fasten upon these lands a lien superior to that of the claim of the appellee. But there was no rule of law or of morals which required him to acquire his lien by involuntary proceedings. He had the same right to procure that lien by the consent of the fraudulent grantors, and by a mortgage from the fraudulent grantee, that he had to obtain it by writ of attachment or creditors' bill. He pursued the latter course. He presented his claim to his debtors, Erasmus Bennett and Edwin R. Bennett, and to their surety upon a portion of their obligations, Clara E. Bennett, and he demanded payment or security. They consented that the fraudulent grantee, who held the title to the real estate, as yet unassailed by any creditor, and not void, but merely voidable, should mortgage that property to secure the just debt they owed. Johnson took the mortgage, and recorded it in the office of the register of deeds of the county in which the land was situated. He filed his mortgage for record on August 10, 1894, and it was not until February 13, 1895, that the Trust Company filed its creditors' bill, and first fastened the lien of its claim upon the real estate in question. Here was nothing but a race of dilligence between two bona fide creditors, and he who was first in time was first in right. A creditor who is aware that his debtor has conveyed his property to a third party for the purpose of defrauding his creditors, but who has no intent to aid him in his fraud, may, with his consent, procure from the fraudulent vendee payment of his just claim from the property fraudulently conveyed, or a lien upon that property to secure his just claim, which will be unassailable by the other creditors of his debtor. Butler v. White, 25 Minn. 432, 438; Dolan v. Van Demark, 35 Kan. 304, 309, 10 Pac. 848; Boyd v. Brown, 17 Pick. 453; Murphy v. Moore, 23 Hun, 95; Stark v. Ward, 3 Pa. St. 328; Webb v. Brown, 3 Ohio St. 246. The mortgage of Johnson constituted a superior lien to that fastened upon the property by the bill in equity of the Trust Company. The decree below is accordingly reversed, and the case is remanded to the court below, with directions to enter a decree in accordance with the views expressed in this opinion.